## 34865. JENKINS et al. v. JENKINS IRRIGATION, INC. et al.

HILL, Justice.

This is a covenant not to compete case. It is not the usual employee restrictive covenant case, however.

Prior to May 22, 1978, defendant-appellant Michael Jenkins and plaintiff-appellee Charles Davenport each owned 50% of the stock of plaintiff-appellee Jenkins Irrigation, Inc., a Georgia corporation with its office in Norcross, Georgia. Jenkins Irrigation, Inc., was engaged in the business of installing, servicing and repairing underground lawn sprinkler systems, both automatic and manual.

On May 28, 1978, plaintiff-appellee Lucy Davenport, as buyer, purchased Michael Jenkins' stock by a tri-party agreement in which Charles Davenport agreed to indemnify Jenkins as to two promissory notes and Jenkins, as seller of the stock, agreed as follows: "Seller shall not, either directly or indirectly, alone or with others, enter into or engage in the business of digging trenches and the installing of underground sprinkler systems and installing or laying of underground cables

or any other type of irrigation equipment sales, manufacture, assembly, installation, repair, or service within the State of Georgia for a period of five (5) years from the date of execution of this Agreement. Further, seller shall not, during such period and in said State, divulge, communicate, use to the detriment of either the buyer or Jenkins Irrigation, Inc., or for the benefit of any other person or persons, or misuse in any way, any confidential information or trade secrets of the business, including customer lists, personnel information, and processes or techniques."

1. At the outset, we find that even though Jenkins Irrigation, Inc., was not a party to the agreement, it may bring this action together with the Davenports who were both parties to the agreement. Charles Davenport agreed to indemnify the seller as to two promissory notes and we cannot say that the covenant not to compete was not intended to protect his interests as well as those of the buyer and the corporation. The trial court did not err in overruling defendant's motion to dismiss Charles Davenport as a party-plaintiff.

The covenant not to compete being ambiguous, we read it as the parties have read it. As thus understood, it restricts the seller for five years from engaging in the State of Georgia, in the business of (1)"digging trenches *and* installing underground sprinkler systems" (emphasis supplied) and installing or laying underground cables or other irrigation equipment in connection therewith, or (2) selling, manufacturing or assembling underground sprinkler systems. The covenant also contains a covenant against use or disclosure of trade secrets.

The evidence submitted at the hearing on plaintiffs' prayers for temporary injunction showed that prior to the stock sale, the corporation had engaged in installing underground lawn sprinkler systems primarily in eight (not all named) counties in the Atlanta metropolitan area, including Gwinnett, Fulton, DeKalb, Clayton, Cobb and Carroll counties, and in addition had done work in Clarke and Muscogee counties. Since the stock sale, the company had done sprinkler jobs in two additional counties. The evidence also showed that the company had not engaged

in the business of laying underground cable except in conjunction with installing automatic sprinkler systems, that the company had engaged in selling and assembling lawn sprinkler systems but that it did not manufacture them.

The evidence also showed that after the stock sale, Jenkins engaged in installing and repairing lawn sprinkler systems in competition with Jenkins Irrigation, Inc., in the metropolitan area of Atlanta and that he was employed by his wife's company, Metro Irrigation, a competitor of Jenkins Irrigation. Evidence was introduced showing that Metro Irrigation advertised in the yellow pages of the telephone directory that Mike Jenkins was its owner.

Jenkins sought to excuse his apparent violation of the covenant not to compete by arguing that when the buyers of the business failed to do so, he was obligated to his former customers to service and repair their sprinkler systems. He suggests that the buyers' breach of warranty to their customers justified his own breach.[1]

The trial court enjoined Jenkins from violating his covenant and he appeals.

2. There are several different types of covenants in restraint of trade. There are employee covenants ancillary to a contract of employment; e. g., *Orkin Ex. Co., Inc. So. Georgia v. Dewberry,* 204 Ga. 794, 802 (51 SE2d 669) (1949). There are convenants ancillary to a professional partnership agreement; e. g., *Rakestraw v. Lanier,* 104 Ga. 188 (30 SE 735) (1898). There are covenants ancillary to franchise and distributorship agreements; e. g., *Rita Personnel Services v. Kot,* 229 Ga. 314 (191 SE2d 79) (1972); *Barrett-Walls, Inc. v. T. V. Venture, Inc.,* 242 Ga. 816 (251 SE2d 558) (1979). There are covenants ancillary to contracts for services by independent contractors; e. g., *Howard Schultz & Assoc. v. Broniec,* 239 Ga. 181 (236 SE2d 265) (1977). The latter four types of covenants have been treated by this court

---

[1]A seller could condition his covenant not to compete upon the buyer's covenant to fulfill seller's warranties. Jenkins did not do so.

like employee covenants ancillary to employment contracts. *Rakestraw,* supra; *Rita Personnel Services,* supra; *Howard Schultz & Assoc.,* supra. "A covenant not to compete ancillary to an employment contract is enforceable only where it is strictly limited in time and territorial effect and is otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee." *Howard Schultz & Assoc.,* supra, 239 at 183.

Also, there is the covenant not to compete made by the seller in conjunction with the sale of a business. *Hood v. Legg,* 160 Ga. 620 (128 SE 891) (1925); see also *Insurance Center v. Hamilton,* 218 Ga. 597, 602 (129 SE2d 801) (1963) and cits. This type of covenant has been treated differently by the courts from employee restrictive covenants. *Rakestraw v. Lanier,* supra, 104 Ga. at 198; *Orkin v. Dewberry,* supra, 204 Ga. at 803. For example, it has been said that covenants not to compete made in conjunction with the sale of a business may be unlimited as to time (so long as the buyer remains in business) and still be valid. *Hood v. Legg,* supra, 160 Ga. at 627; *Orkin v. Dewberry,* supra.[2]

There are valid reasons for this difference in treatment between employee covenants and sale of business covenants. Regarding sale of business covenants, the court in *Hood v. Legg,* supra, 160 Ga. at 628-629, said: "There are several reasons for upholding a covenant on the part of the vendor in all such cases to desist from the business in competition with the purchaser, which do not obtain in other cases. . . [T]he vendor receives an equivalent for his partial abstention from that business, in the increased price paid him for it on account of his covenant; and his entering into the observance of the covenant not only do not tend to his pauperization to the detriment of the public, but on the contrary, by securing to him the full value of his business

---

[2]Because it has not been argued, we do not decide in this case whether a sale of business covenant must expressly provide for termination upon the buyer's ceasing to do business.

and its good will, a value which he has an absolute right to secure in this way, the covenant operates to his affirmative pecuniary benefit and against his impoverishment, in that, while being paid for desisting from the particular business in the locality covered by it, he may still enter upon other pursuits of gain in the same locality or upon this one in other localities. Finally, while such covenants preclude the competition of the covenantor, it is ordinarily neither their purpose nor effect to stifle competition generally in the locality, nor to prevent it at all in a way or to an extent injurious to the public, for the business in the hands of the purchaser is carried on just as it was in the hands of the vendor, the former merely takes the place of the latter, the commodities of the trade are as open to the public as they were before, the same competition exists as existed before . . . the profits of the business go as they did before to swell the sum of public wealth, the public has the same opportunities of purchasing, if it is a mercantile business, and production is not lessened if it is a manufacturing plant. 6 R. C. L. 793, § 197."

Although the transaction in the case before us was the sale of stock in a business, we hold that, for covenant not to compete purposes, it is to be treated like the sale of the assets of a business. *Hood v. Legg,* supra. Thus, the territorial limitation must be reasonable. Whether measured by the territory in which the business was conducted when sold, or measured also by the territory into which the seller knew the business planned to expand, see *Hood v. Legg,* supra, 160 Ga. at 631, the territory covered by this covenant was unreasonable. See *Orkin v. Dewberry,* supra, 204 Ga. at 807; *Purcell v. Joiner,* 231 Ga. 85 (200 SE2d 363) (1973); *Wulfhorst v. Hudgins & Co.,* 231 Ga. 170, 172 (200 SE2d 743) (1973); *Worley & Assoc. v. Bull,* 233 Ga. 276 (210 SE2d 807) (1974). The business had operated in 10 counties at the time of sale while the territory covered by the covenant not to compete was the entire state. Thus the territorial limitation in this covenant was too broad.

3. The seller contends that we have held that we will not utilize the "blue pencil theory of severability" to restrict the territorial limitation to a reasonable area.

*Rita Personnel Services v. Kot,* supra. However, as heretofore noted, *Rita Personnel* was treated as if it involved an employee covenant. As was noted in the dissent in *Rita Personnel,* the court in *Hood v. Legg,* supra, a sale of business case, severed the unreasonable sale of "other clay products" from the reasonable sale of brick; i.e., in *Hood v. Legg,* there was a "blue pencil severance" among the activities proscribed in the covenant in that sale of business case.[3] In *Howard Schultz & Assoc. v. Broniec,* supra, 239 Ga. at 185, we said ". . . we are not called upon in this case to adopt or reject the blue-pencil theory as to covenants involved in the sale of a business."

Now we are called upon to make that decision—should we adopt or reject the blue pencil theory as to the territorial covenant involved in the sale of a business? As already noted, *Hood v. Legg* applied severance as among the activities proscribed by the covenant.

When a person sells a business and covenants not to compete in a certain territory, the buyer pays and the seller receives a part of the total purchase price as consideration for that covenant. The buyer frequently would not buy the business if the seller were free to begin competing immediately. By restricting the territory to an area less than that specified in the covenant, the court requires the seller to do that which the buyer and seller bargained for, yet in a smaller area than that agreed to by the seller. The reasons for rejecting severability in employee covenants, *Rita Personnel Services v. Kot,* supra, are not applicable to covenants not to compete made in conjunction with the sale of a business. Many courts in this country apply the "blue pencil" to covenants not to compete. 14 Williston on Contracts (3rd) 285, § 1647B (1972). Without disapproving *Rita Personnel Services v. Kot,* supra, we join those courts as to covenants not to compete made in conjunction with the sale of a business. That is to say, where a covenant not to compete

---

[3]Thus *Hood v. Legg* would authorize severance as to the "manufacturing" of underground sprinkler systems in the case now before us.

made by a seller in conjunction with the sale of a business designates an area greater than that reasonably necessary to protect the buyer, the court will enjoin the seller from competing in only so much of that area as it finds from the clear and convincing evidence is essential to protect the buyer.

It is not necessary that the drafter of the covenant has written it so that it is divisible by excising certain parts or words of the covenant. "Thus, the seller of a purely local business who promised not to open a competing store anywhere in America has been prevented by injunction from running such a store within the same block as the one that he sold." 6A Corbin on Contracts 66, 71-73, § 1390 (1962).

However, we want to continue to encourage covenant writers to proscribe only such territory as is reasonably necessary to protect the buyer of the business, and to deter them from staking out more territory than is reasonable (e.g., America) in anticipation that the court will pare the territory to that which is reasonable. See *Rita Personnel v. Kot,* supra, 229 Ga. at 317. Therefore, when it becomes necessary for a superior court to use the blue pencil to prescribe the territory, the proscribed area usually should not be as extensive as the parties could have validly negotiated for themselves, and it should be only such area as is shown by the buyer by clear and convincing evidence to be essential (as opposed to reasonably necessary) for the protection of his interests. Moreover, the superior court should disregard isolated transactions in the periphery in determining the area served by the seller, may disregard areas into which the buyer intended to expand, and may make such other territorial provisions as the court in its discretion finds appropriate for the protection of the parties and the public.

4. A trade secrets covenant is severable from a covenant not to compete, *Aladdin, Inc. v. Krasnoff,* 214 Ga. 519 (3) (105 SE2d 730) (1958); compare *Rita Personnel Services v. Kot,* supra; see *Howard Schultz & Assoc. v. Broniec,* supra, 239 Ga. at 185-186. There was no evidence of any protective trade secrets or confidential information on which to base an injunction in this case. *Textile Rubber &c. Co. v. Shook,* 243 Ga. 587 (1) (255 SE2d 705) (1979).

5. Upon remand, the trial court is directed to limit the injunction to prohibiting the installation of underground sprinkler systems in that territory found by the court from the clear and convincing evidence to be essential for the buyer's protection under the facts of this case.

*Judgment affirmed with direction. All the Justices concur, except Undercofler, P. J., who dissents.*

Argued May 15, 1979 — Decided September 5, 1979.

*Sliz & Rees, Jeffrey R. Sliz,* for appellants.
*Glyndon C. Pruitt,* for appellees.