## 39248. WHITE v. FLETCHER/MAYO/ASSOCIATES, INC.
### et al.

BELL, Justice.

This is a suit by a former employee of an advertising company for a declaration that certain non-competition covenants he agreed to are unenforceable because they are against public policy.

In 1973 appellant, Eldredge White, graduated from college and was hired by Fletcher/Mayo/Associates, Inc. (FMA) a marketing, advertising, and sales promotion company based in St. Joseph, Missouri. He was transferred to Atlanta in November of 1977 as a corporate vice-president and manager of the Atlanta office, and was named a senior vice-president in May 1981.

FMA began merger negotiations with appellee Doyle Dane Bernbach International, Inc., a New York advertising firm, culminating in a March 1982 merger which was accomplished by Doyle Dane forming a subsidiary Delaware corporation, the other appellee in this case, which acquired FMA and took its name. Doyle Dane paid $3.1 million for FMA, which had a book value of $1.7 million; the difference between book value and the total price was money paid for the goodwill of FMA. White had no control over the decision to seek a merger and took no part in the merger negotiations. Prior to the merger FMA had encouraged its employees to invest in the company through stock purchases. At the date of merger White, through stock bonuses and his own purchases, owned 7,114 shares of FMA common stock, which represented 4.62% of the total FMA stock and were worth a book value of about $85,000. Sixty-nine of FMA's employees held stock, and among them White ranked fifth in size of holdings. Two shareholders, Fletcher and Mayo, together held 43.38% of the stock. They were FMA's principal officers and the only officers or shareholders who sat on FMA's board of directors. FMA shareholders voted March 16, 1982 on the issue of merger with Doyle Dane. Those voting in favor of merger received Doyle Dane common stock in exchange for their FMA stock at a rate of 1.2991 Doyle Dane shares for each FMA share. Those who dissented received no Doyle Dane stock and instead received the fair market value of their shares. White voted in favor of merger and received, according to the standard exchange rate for all stockholders, Doyle Dane stock worth about $145,000, thus realizing a paper profit of about $60,000 on the corporate acquisition.

Prior to the merger White had no written employment contract with FMA. Doyle Dane conditioned its purchase of FMA on White signing agreements containing restrictive covenants in favor of FMA and Doyle Dane. Only three other employees of FMA — Fletcher,

Mayo, and the chief financial officer — signed such agreements; no others, including the fourth largest shareholder and two other senior vice-presidents, made such agreements. White testified that at the time FMA told him he should sign the agreements because they were necessary to guarantee his job and secure broader career opportunities for him. There was trial testimony for appellees that FMA's biggest client was serviced out of the Atlanta office, that White supervised service of this and other accounts, and that he was asked to sign the covenants because, in light of his client contacts, he was considered a key employee.

Soon after the merger White was fired. He filed suit to determine whether he had to honor the covenants he had agreed to. The learned trial judge, after careful consideration of the evidence and past decisions of this court, found the covenants overbroad but also found that they had been entered into ancillary to the sale of FMA, and that the court therefore had the authority to blue pencil[1] the covenants into a more limited form. The judge extensively edited them, declared them enforceable as rewritten, and enjoined White from breaching them. White appeals. Appellees argue that White was a seller, but stipulate that if we decide that the covenants should be treated as ancillary to White's employment, then they are entirely unenforceable. We hold for White, and reverse.

"A covenant not to compete ancillary to an employment contract is enforceable only where it is strictly limited in time and territorial effect and is otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee." *Howard Schultz & Assoc. v. Broniec,* 239 Ga. 181 (1) (236 SE2d 265) (1977). If such a covenant as read in its entirety is unenforceable, then under the doctrine announced in *Rita Personnel Services v. Kot,* 229 Ga. 314 (191 SE2d 79) (1972), it cannot be judicially rewritten so as to sever the objectionable portion, because to do so would violate public policy. In the *Rita Personnel Services* case Kot entered into a franchise agreement with Rita, and covenanted not to compete with Rita for two years after termination of the franchise agreement in three named counties "or in any territorial area in which a franchise has been granted by Rita." The franchise was ended, and Rita sought to have the court

---

[1] This term is broadly applied in Georgia to include judicial editing of covenants which were not written in such a way that they are divisible by simply excising certain parts or words from them. *Jenkins v. Jenkins Irrigation,* 244 Ga. 95 (3), 101 (259 SE2d 47) (1979). See *Howard Schultz & Assoc. v. Broniec,* 239 Ga. 181 (3) (236 SE2d 265) (1977); Restatement (2d) of Contracts § 184, Reporter's Note (1981); 6A Corbin on Contracts § 1390 (1962).

obliterate the quoted phrase, which was clearly unreasonable, and enforce the remainder. The trial court refused the requested judicial surgery, and this court affirmed, concluding that although there were good reasons for severance, they were offset by the potential in terrorem effect on employees who do not challenge their contractual obligations. *Rita Personnel Services,* id. at 317, citing Blake, 73 Harv. L. Rev. 625, 682-83 (1960).[2] Accord, *Howard Schultz & Assoc.,* supra, at 186.

On the other hand, if a covenant not to compete has been made by a seller ancillary to the sale of a business, the seller "may be enjoined from competing to the extent that it is found essential, by clear and convincing evidence, to protect the purchaser, despite the overbreadth of the covenant." *Redmond v. Royal Ford,* 244 Ga. 711, 713 (261 SE2d 585) (1979), citing *Jenkins v. Jenkins Irrigation,* 244 Ga. 95 (259 SE2d 47) (1979). In the *Jenkins* case Jenkins owned 50% of the stock of Jenkins Irrigation; he sold his interest and covenanted not to compete in that business for five years in the State of Georgia. The territorial restriction of the covenant was too broad, and hence unreasonable, but we held that Jenkins could be enjoined from competing in a more limited geographical area in which the buyer could show by clear and convincing evidence that protection from competition by Jenkins was essential for the buyer's protection. In

---

[2] Because Blake succinctly states the argument against severance in employment contracts, he is worth repeating here: "Courts and writers have engaged in hot debate over whether severance should ever be applied to an employee restraint. The argument against doing so is persuasive. For every covenant that finds its way to court, there are thousands which exercise an *in terrorem* effect on employees who respect their contractual obligations and on competitors who fear legal complications if they employ a covenantor, or who are anxious to maintain gentlemanly relations with their competitors. Thus, the mobility of untold numbers of employees is restricted by the intimidation of restrictions whose severity no court would sanction. If severance is generally applied, employers can fashion truly ominous covenants with confidence that they will be pared down and enforced when the facts of a particular case are not unreasonable. This smacks of having one's employee's cake, and eating it too." Blake, supra, at 682-83.

Blake went on to note that not all employment contracts are adhesion contracts and that requiring employers to exactly tailor covenants to each employee would generally place upon them an impossible administrative burden. He suggested that if the employer acted in good faith in accord with a policy and practice to design restraints which are fair and only protect his legitimate interests, then the courts should engage in partial severance on the employer's behalf. Id. at 683-84. This court has not followed this approach, but it is noteworthy that even under Blake's test FMA and Doyle Dane apparently could not even meet the burden of showing either that the terms of White's covenants were actually negotiated with him or that Doyle Dane's "policy and practice with regard to such restraints generally has been devised with reasonable regard to avoiding undue burdens on employees." Id. at 684.

reaching this conclusion we found that *Rita Personnel Services,* supra, was distinguishable: "When a person sells a business and covenants not to compete in a certain territory, the buyer pays and the seller receives a part of the total purchase price as consideration for that covenant. The buyer frequently would not buy the business if the seller were free to begin competing immediately. By restricting the territory to an area less than that specified in the covenant, the court requires the seller to do that which the buyer and seller bargained for, yet in a smaller area than that agreed to by the seller. The reasons for rejecting severability in employee covenants, *Rita Personnel Services v. Kot,* supra, are not applicable to covenants not to compete made in conjunction with the sale of a business. Many courts in this country apply the 'blue pencil' to covenants not to compete. 14 Williston on Contracts (3rd) 285, § 1647B (1972). Without disapproving *Rita Personnel Services v. Kot,* supra, we join those courts as to covenants not to compete made in conjunction with the sale of a business." *Jenkins,* supra, at 100.

In short, we do not blue pencil in employment contract cases, but do in sale of business cases. For this reason, if we are confronted with a case challenging the enforceability of a noncompetition covenant, our threshold task is to classify the agreement containing the covenant. In cases such as *Rita* and *Jenkins* the classification is obvious. Indeed, there are four cases, including *Rita,* which are cited in *Jenkins* as dealing with types of covenants which "have been treated by this court like employee covenants ancillary to employment contracts," *Jenkins,* supra, at 97-98; an examination of these cases shows the typology in each was either assumed or cursory. See *Rakestraw v. Lanier,* 104 Ga. 188 (30 SE 735) (1898) (professional partnership agreement); *Rita,* supra (franchise agreement); *Barrett-Walls, Inc. v. T. V. Venture, Inc.,* 242 Ga. 816 (251 SE2d 558)(1979)(distributorship agreement); *Howard Schultz,* supra (contract for services by independent contractor).

That the classification is less obvious where the covenant is in an agreement which is contended to be ancillary to both employment and the sale of an interest in a business became evident in the case of *Redmond v. Royal Ford,* supra. See 32 Mercer L. Rev. 25, 27-29 (1980). Redmond had been hired by Royal Ford as a salesman; later he was promoted to executive, in connection with which he signed a contract containing covenants not to compete, bought a 10% stock interest in Royal Ford, and gave the company an option upon termination of his employment to repurchase the stock at 20 % over book value. He later left the company, and Royal Ford repurchased his stock, then sought to enforce the covenants. The restraints were overbroad, and the issue on appeal was whether they could be blue

penciled. We first found the contract was clearly ancillary to his employment, but that there was still a question whether the stock option forced the agreement into the sale of business category. In a per curiam decision in which two justices concurred, two concurred specially, and three dissented, the majority opinion applied the *Jenkins* analysis and held that the case under consideration was distinguishable because, in contrast to cases such as *Jenkins,* supra, and *Hood v. Legg,* 160 Ga. 620 (128 SE 891) (1925), in which the promissors had sold the goodwill of their businesses and had been compensated for it, Redmond was a *buyer* who had made his covenants not to compete in conjunction with the acquisition of an interest in Royal Ford. *Redmond,* supra at, 713-715. Accord, *Horne v. Drachman,* 247 Ga. 802 (2), 805 (280 SE2d 338) (1981).

The factual situation facing us now is more complex than *Redmond's,* since although the covenants in question were clearly ancillary to White's employment and contemporaneous with his acquisition of an interest in Doyle Dane, they were also contemporaneous with White's profitable relinquishment of his interest in the pre-merger FMA. However, the profit White made on his exchange of stock was strictly proportional to that which was received by all other shareholders, ninety-four percent of whom were not asked to make such covenants. Compare *Alexander & Alexander, Inc. v. Wohlman,* 578 P2d 530, 537-38 (Wash. App. 1978) (stock of acquiring company was distributed to employees in proportion to amount of income each generated, not in proportion to percentage of shares owned in acquired company). Thus, it is problematical whether his profit constituted consideration for his covenants not to compete, or whether the sole consideration flowing to White in return for those covenants was his continued employment.

Even assuming the validity of appellees' contentions that White, Esau-like, improvidently gave up his major economic asset (for White, his right to use his specialized job skills) for a $60,000 mess of pottage, see generally Blake, supra at 648, there remains a question whether White, because of his employee status, had the same unfettered bargaining capacity as the seller of a business. It is clear that despite his ownership of a relatively small interest in FMA and his potential veto power over the merger, White had no control over overall management of FMA, and in fact had so little bargaining clout within FMA that he was unable to prevent his own termination. He was nothing more than an employee, albeit an important one, and as an employee White could reasonably have assumed that if he did not do as FMA and Doyle Dane wished he would be stigmatized as not being a team player, thereby jeopardizing his career prospects with FMA.

Pretermitting the question whether FMA and Doyle Dane in fact took advantage of their dominant bargaining power to extract White's promises, we find that redrafting the covenants would create a serious danger of sapping the vitality of the *Rita Personnel Services* doctrine. Such redrafting would encourage a purchaser of an existing business to genteelly coerce an employee of the acquired business to agree to an employment contract which contains noncompetition covenants and which appears to be the result of a true bargain but is actually a contract of adhesion. See fn. 1, supra; Restatement (2d) of Contracts § 164, Comment b (1981) (courts will not redraft overbroad agreements extracted by taking advantage of dominant bargaining power). For this reason we hold today that where a trial judge is asked to determine the enforceability of a noncompetition covenant which the buyer of a business contends was given ancillary to the covenantor's relinquishment of his interest in the business to the buyer, and not given solely in return for the covenantor's continued employment, the judge must determine the covenantor's status. If it appears that his bargaining capacity was not significantly greater than that of a mere employee, then the covenant should be treated like a covenant ancillary to an employment contract, and "[a]s such, it should be enforced as written or not at all." *Redmond,* supra at 715. Because we find that White was an employee, we conclude that the trial court erred in blue penciling White's covenants and in granting the injunction to enforce them in their judicially edited form.

*Judgment reversed. All the Justices concur, except Marshall, P. J., who dissents.*

DECIDED JUNE 24, 1983 —
REHEARING DENIED JULY 21, 1983.

*Macey & Sikes, Abraham A. Sharony, Neil C. Gordon,* for appellant.
*Freeman & Hawkins, Michael J. Goldman,* for appellees.