## 41258. WATSON et al. v. WAFFLE HOUSE, INC.
(324 SE2d 175)

CLARKE, Justice.

Waffle House and the Watsons entered into an agreement in 1978 for the lease of a Waffle House restaurant to be operated by the Watsons in Warner Robins, Georgia. The agreement provided that the lease would be for a one-year period and renewable each year. It further provided for a review and joint decision by the parties as to renewal. The lease agreement provided that upon termination of the lease the Watsons could not compete with Waffle House by engaging in the restaurant or fast food business within a five-mile radius for a period of two years.

In 1984 the Watsons opened a new restaurant .4 mile from the Waffle House in Warner Robins. Waffle House sued to enjoin them from engaging in the restaurant business for two years from January 13, 1984, within a five-mile radius of the Waffle House which they had operated. The trial court granted Waffle House a permanent injunction. The Watsons appeal. We affirm.

1. The Watsons contend that since the lease agreement provided for annual review of the agreement and a joint decision to renew the agreement, mere holding over did not renew all of the terms of the lease. Thus, they reason, the lease expired on March 18, 1979, and the two-year non-competition period ran March 18, 1981. They base this contention on *Citizens Oil Co. v. Head*, 201 Ga. 542 (40 SE2d 559) (1946), and *Ellis v. Brookwood Park Venture*, 161 Ga. App. 242 (288 SE2d 308) (1982). However, *Citizens Oil Co. v. Head* deals with a statute of frauds question in a new, as distinguished from renewed, contract or extension of a contract and *Ellis v. Brookwood Park Venture* concerns dispossessory warrant proceedings brought to evict a tenant. More directly applicable to the situation at hand is *Chalkley v. Ward*, 119 Ga. App. 227 (166 SE2d 748) (1969), in which departure from the notice and renewal provisions of the lease resulted in the lease being renewed without strict adherence. The lease remained the same, only the method of renewal changed. We find that the two-year anti-competition period did not begin to run until January 13, 1984.

2. The Watsons next contend that the anti-competition clause is too broad to be enforceable because it restricts them from engaging in the restaurant or fast food business in any capacity. A different standard is applied in determining the validity of covenants contained in employment contracts and those which are a part of a contract to sell a business. When a portion of a covenant not to compete which is a part of a sale of a business interest is found to be unreasonable, the court has tended nevertheless to uphold the remaining portions of the covenant by "blue penciling" or severing the overly broad restrictions. On the other hand, the court has found covenants not to compete

which are part of a contract of employment to be nonseverable and has held that overbreadth of one portion of the covenant so taints the entire covenant as to make it unenforceable.

The transaction before the court in this case fits neither of these circumstances. Here we have a lease of building premises tied to what amounts to a franchise agreement under which the business must be operated according to certain conditions and limitations imposed by the lessor/franchisor. The question then is whether a transaction of this sort is analogous to an employment contract or to a contract for the sale of a business interest. The rationale behind the distinction in analyzing covenants not to compete is that a contract of employment inherently involves parties of unequal bargaining power to the extent that the result is often a contract of adhesion. On the other hand, a contract for the sale of a business interest is far more likely to be one entered into by parties on equal footing. *White v. Fletcher/Mayo/Assoc., Inc.*, 251 Ga. 203 (303 SE2d 746) (1983).

A lease agreement which bears the characteristics of a franchise creates a relationship in which the lessor possesses substantially superior bargaining power. It is for this reason that we adhere to our previous rule that such an agreement is analogous to an employment contract for purposes of analyzing the covenant not to compete. Cf. *Howard Schultz &c. v. Broniec*, 239 Ga. 181 (236 SE2d 265) (1977); *Rita Personnel Services v. KOT*, 229 Ga. 314 (191 SE2d 79) (1972).

Having determined that the anti-competition provisions of the agreement are not severable, we look now to whether any of those provisions are so unreasonable as to cause all of them to be unenforceable. This court has followed the practice of determining reasonableness of the covenant not to compete by analyzing it in terms of time, territorial effect, and the business interest of the employer sought to be protected. *Howard Schultz &c. v. Broniec*, supra. The employment of this test in determining reasonableness has not been without criticism. In a dissent former Chief Justice Jordan once wrote, "[t]en Philadelphia lawyers could not draft an employer-employee restrictive covenant agreement that would pass muster under the recent rulings of this court." *Fuller v. Kolb*, 238 Ga. 602 (234 SE2d 517) (1977). Others have said that the test overly emphasizes mechanical rules and presumptions and therefore subjects the finding of reasonableness to artificial conditions. It has been suggested that a rule of reason in its most general form should be applied and that the court should exercise more discretion in its determinations by giving closer attention to the operation of each covenant in a particular factual setting. We can appreciate the concerns of both critics. It appears, however, that their criticisms seek different results. One calls for clearer guidelines for the drafter while the other calls for the application of additional subjective judgments so that better results will

be reached. We believe both of these ends can best be served by retaining the three-element test of duration, territorial coverage, and scope of activity and utilizing it, not as an arbitrary rule but as a helpful tool in examining the reasonableness of the particular factual setting to which it is applied.

In the present case, the time and territorial effect are without question reasonable. They are also relevant considerations in the restaurant business case. There remains a question of the breadth and burdensomeness of the activity sought to be restricted. We have held that a restriction of employment in a business "in any capacity" is overbroad and unreasonable. *Dunn v. Frank Miller Assoc.*, 237 Ga. 266 (227 SE2d 243) (1976). However, we do not view this as an "in any capacity case." To determine the reasonableness of the restricted activity, we look to its nature and to whether it affects the business interests of the employer. The evidence here indicates that the business of a Waffle House is such that the Watsons were its heart and soul. Their participation involved every facet of the business and they gained knowledge which the Waffle House has a reasonable stake in protecting. Under these circumstances, a prohibition against engaging in the restaurant or fast food business in such a narrow area for so short a time simply means that the Watsons shall not compete within that time and within that area. This restraint cannot be said to be unreasonable.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 1985.

*Pettigrew & Trippe, Harry W. Pettigrew, David R. Trippe,* for appellants.

*Nunn, Geiger & Pierce, George F. Nunn, Jr.,* for appellee.