A90A0401. ARNALL INSURANCE AGENCY, INC. v. ARNALL.
(396 SE2d 257)

McMURRAY, Presiding Judge.

Plaintiff Arnall Insurance Agency, Inc., brought suit against defendant Guy C. Arnall in the Superior Court of Coweta County. The complaint, as amended, was couched in six counts. We are only concerned in this appeal with Count 1 of the complaint in which plaintiff seeks damages for the alleged breach of a restrictive covenant contained in an employment agreement. The superior court agreed with defendant that the restrictive covenant is unenforceable. Accordingly, it granted defendant's motion for summary judgment upon Count 1 of the complaint.

Defendant and Newnan Federal Savings & Loan Association ("Newnan Federal") entered into the employment agreement on January 1, 1983. In a preamble, the employment agreement recites: "WHEREAS, a service corporation of Newnan Federal simultaneously with the execution of this Agreement is acquiring the general insurance business that has heretofore been operated by the Hamilton C. Arnall Insurance Agency (hereinafter referred to as the 'Agency'); and WHEREAS, Arnall is a licensed insurance agent and has heretofore been one of the two general partners and principal managers of the Agency; and, WHEREAS, Newnan Federal needs Arnall's experience and expertise in operating the business that has heretofore been conducted by the Agency and desires to employ him to act in a managerial capacity with the insurance business that has heretofore been operated by the Agency . . . and, WHEREAS, Arnall desires to be employed in such capacity; NOW THEREFORE, the parties hereto in consideration of the mutual covenants herein contained, agree as follows . . ." The employment agreement went on to set forth the terms and conditions of defendant's employment.

For summary judgment purposes the parties stipulated that the restrictive covenant in the employment agreement reads, in part, as

follows:[1] "Arnall hereby agrees that so long as this Agreement is in force, and for a period of two (2) years thereafter, unless *neither* Newnan Federal *nor* any subsidiary or affiliated organization or entity shall be conducting a general insurance business, Arnall will not, unless acting as an officer or employee of Newnan Federal or any such subsidiary, service corporation or affiliated entities or corporation, their successors or assigns, without Newnan Federal's prior written consent, directly or indirectly own, manage, operate, join, control or participate in, or be connected as an officer, employee, partner, stockholder, agent, representative or otherwise with, any business under any name similar to Hamilton C. Arnall Insurance Agency or Arnall Insurance Agency, and that for the same period he will not in any such manner directly or indirectly compete with or become interested in any competitor of Newnan Federal, its subsidiaries, service corporations, affiliated entities or corporations, their successors and assigns in the general insurance business (which shall include, without limitation, . . . life insurance, accident insurance, health insurance, medical insurance, property and casualty insurance, and surety bonds) within the geographical area of a 40-mile radius from the City of Newnan, Coweta County, Georgia (except for that area within the perimeter of Interstate Highway 285) other than as an investment in a publicly traded corporation. This restrictive covenant shall be in addition to, and not in lieu of, any other restrictive covenant that Arnall may execute in any other contract that Arnall may have with Newnan Federal, its subsidiaries, service corporations and affiliated entities and corporations, their successors and assigns. . . ." (Emphasis supplied.)

DFS Financial Corporation ("DFS") purchased the Hamilton C. Arnall Insurance Agency from defendant Guy C. Arnall and R. Emory Holland pursuant to an Agreement of Purchase and Sale entered into on January 1; 1983. DFS was a service corporation of Newnan Federal which executed the purchase and sale agreement as a guarantor. The purchase and sale agreement also contains a restrictive covenant which reads, in part: "Each partner of Seller, by his signature hereto, agrees that . . . he will not, unless acting as an officer or an employee of Buyer, its successors and assigns, without Buyer's prior written consent, directly or indirectly own, manage, operate, join, control, or participate in, or be connected as an officer, employee, partner, stockholder, agent, representative, or otherwise with, any business under any name similar to Seller's name, and that for a period of five (5)

---

[1] Actually, the restrictive covenant in the employment agreement reads, in part: "Arnall hereby agrees that so long as this agreement is in force, and for a period of two years thereafter, unless *either* Newnan Federal *or* any subsidiary or affiliated organization or entity shall be conducting a general insurance business . . ." (Emphasis supplied.) Plaintiff seeks the reformation of this language in Count 6 of its complaint.

years after the effective date hereof, he will not in any such manner directly or indirectly compete with, or become interested in any competitor of, Buyer, its successors and assigns in the general insurance business, (which shall include, without limitation, any business which shall render consultation or advice concerning insurance of any type or sell any insurance line at any time sold by Buyer, and including, without limitation, life insurance, accident insurance, health insurance, medical insurance, property and casualty insurance, and surety bonds) within the geographical area of a 40-mile radius from the City of Newnan, Coweta County, Georgia, (except for that area within the perimeter of Interstate Highway 285), other than as an investment in a publicly traded corporation. This restrictive covenant shall be in addition to, and not in lieu of, any other restrictive covenant that the partners of Seller may execute in any employment contract that said partners may have with Buyer, its successors and assigns. . . ."

Months after the execution of the employment agreement, Newnan Federal assigned the employment agreement to DFS which changed its name to Arnall Insurance Agency, Inc. Defendant worked for Arnall Insurance Agency, Inc., plaintiff, until February 1988. On or about March 1, 1988, defendant opened a competing insurance business and this suit followed. *Held*:

1. "Covenants against competition contained in employment contracts are considered in partial restraint of trade and are to be tolerated only if strictly limited in time and territorial effect and otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee. *Orkin Exterminating Co. v. Dewberry*, 204 Ga. 794 (51 SE2d 669) (1949); *Rakestraw v. Lanier*, 104 Ga. 188 (30 SE 735, 69 ASR 154) (1898). 'Whether the restraints imposed by an employment contract are reasonable is a question of law for determination by the court.' *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp*, [224] Ga. 160, 162 (160 SE2d 356) (1968)." *Orkin Exterminating Co. v. Pelfrey*, 237 Ga. 284, 285 (227 SE2d 251). If it is not limited with regard to either time, territory or scope of activity, the entire covenant fails. Georgia does not employ the "blue pencil theory of severability" when it comes to covenants contained in employment contracts. *Richard P. Rita &c. Intl. v. Kot*, 229 Ga. 314 (191 SE2d 79). Compare *Jenkins v. Jenkins Irrigation*, 244 Ga. 95 (259 SE2d 47), in which the "blue pencil theory of severability" was applied to a covenant contained in a sales agreement.

Regarding scope of activity, our courts have held restrictive covenants "unreasonable where the nature of the business activities in which the employee is forbidden to engage is not specified with particularity. See *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181 (236 SE2d 265) (1977); *Southeastern Beverage &c. Co. v. Dillard*, 233 Ga.

346 (211 SE2d 299) (1974); *Dixie Bearings, Inc. v. Walker*, 219 Ga. 353 (133 SE2d 338) (1963); *Artistic Ornamental Iron Co. v. Wilkes*, 213 Ga. 654 (100 SE2d 731) (1957). In the foregoing cases, restrictive covenants in which the employee was forbidden from engaging in any business or activity competitive with the business of the employer were struck down on the ground that the description of the prohibited activity was too indefinite to be enforced. See also *Mason, Au & Magenheimer &c. Co. v. Jablin*, 220 Ga. 344 (138 SE2d 660) (1964); *Friedman v. Friedman*, 209 Ga. 653 (74 SE2d 860) (1953)." *Uni-Worth Enterprises v. Wilson*, 244 Ga. 636, 639 (261 SE2d 572).

In *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181 (236 SE2d 265) for example, a restrictive covenant contained in an employment agreement specified that the employee would not compete with the employer " 'directly or indirectly, as principal, agent, employer, employee, or in any capacity whatsoever . . .' " Id. at 182. Striking down the covenant, the Supreme Court held, inter alia: "[A] covenant wherein the employee agreed not to accept employment with a competitor 'in any capacity' imposes a greater limitation upon the employee than is necessary for the protection of the employer and therefore is unenforceable. [Cits.]" Id. at 184.

Likewise, in *McNease v. Nat. Motor Club*, 238 Ga. 53 (231 SE2d 58), the Supreme Court ruled a restrictive covenant in an employment agreement to be unenforceable because the limitation placed on the employee was larger than was necessary to protect the employer. The significance of *McNease*, in cases of this kind, is that, although the words "in any capacity" were not employed in the restrictive covenant, the court likened the covenant to an "in any capacity" covenant: "Under this clause of the contract the employee is *in effect* prohibited from working in any capacity for a competitor. . . ." (Emphasis supplied.) Id. at 56.

The *McNease* rationale was followed in *Jarrett v. Hamilton*, 179 Ga. App. 422 (346 SE2d 875). The restrictive covenant in *Jarrett* was similar to the one in the case sub judice in that it, too, employed the words "or otherwise." The *Jarrett* covenant prohibited the employee from competing with the employer " 'directly or indirectly . . . either as an individual on his own or as a partner or joint venturer, or as an employee or agent for any person, or as an officer, director, or shareholder *or otherwise* . . .' " This Court held the covenant to be unenforceable, reasoning: "We find the words 'or otherwise,' climaxing a catalogue of specific prohibitions, to be the functional equivalent of the phrase 'in any capacity' employed by the court in *McNease*, supra, in testing the challenged provision for reasonableness." *Jarrett v. Hamilton*, 179 Ga. App. 422, supra at 424.

In the case sub judice, we find the words "or otherwise," following a list of proscribed activities, to be the "functional equivalent of

the phrase 'in any capacity'. . . ." *Jarrett v. Hamilton*, supra at 424. The words render the restrictive covenant unreasonable inasmuch as they limit the activities of defendant more than is necessary to protect the plaintiff. *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, supra; *McNease v. Nat. Motor Club*, 238 Ga. 53, supra. It follows that the restrictive covenant is unenforceable.

Relying upon *Watson v. Waffle House*, 253 Ga. 671 (324 SE2d 175), plaintiff urges us to uphold the restrictive covenant. In this regard, plaintiff argues that, like the Watsons in *Waffle House*, the defendant was the "heart and soul" of plaintiff's business. We cannot accept this argument. Simply put, *Waffle House* was not an "in any capacity case." Id. at 673. Besides, the Watsons were not mere employees. They leased the business and operated it, participating in "every facet of the business." They were the "heart and soul" of the business and their departure effectively brought the business to a standstill. Although, in the case sub judice, defendant was a major player in plaintiff's business, he was, when all is said and done, an employee. Defendant's departure may have hurt plaintiff; but it did not bring the business to a halt. It cannot be said, therefore, that defendant was the "heart and soul" of the business.

2. Taking the position that the restrictive covenant was entered into in connection with a sales agreement, and not as part of an employment contract, plaintiff urges us to apply the "blue pencil theory of severability" and to narrow the activities proscribed by the covenant in order to make them reasonable. Compare *Jenkins v. Jenkins Irrigation*, 244 Ga. 95, supra ("blue pencil" will be applied to a restrictive covenant contained in a sales agreement) with *Richard P. Rita &c. Intl. v. Kot*, 229 Ga. 314, supra, ("blue pencil" will not be applied to a restrictive covenant contained in an employment contract). This we cannot do.

In *Watkins v. Avnet, Inc.*, 122 Ga. App. 474 (177 SE2d 582), Watkins was the president and majority stockholder of Southeastern Motor Products Company ("Southeastern Motor"). Avnet, Inc. ("Avnet") purchased Southeastern Motor pursuant to an agreement with the corporation and its stockholders. On the same day that Avnet acquired Southeastern Motor, Watkins entered into a separate employment agreement with Fairmount Motor Products ("Fairmount"), a division of Avnet, pursuant to which Watkins became the Branch Manager of the Southeastern Division of Fairmount. The employment agreement referred to the acquisition of Southeastern Motor by Avnet and contained a covenant not to compete. Watkins sought a declaration that the covenant was unenforceable. Determining that the covenant was contained in an employment contract and was not to be construed as part of a sales agreement, the court ruled: "Although the contract here involved is clearly related to the sale of a

business, and in this sense involves only one aspect of a larger transaction, it is nonetheless a contract of employment, and must be construed under the rules applicable to the latter." *Watkins v. Avnet, Inc.*, 122 Ga. App. 474, supra at 476 (4).

In the case sub judice, as in *Watkins*, the employment contract is part of a larger transaction. (Indeed, as in *Watkins*, the employment contract makes reference to the sales agreement.) Nevertheless, we must construe the restrictive covenant contained in the employment contract as just that — a covenant contained in an employment contract. After all, the employment contract and the sales contract are separate documents between separate (albeit corporately related) parties and with separate subject matters. See *Moran v. NAV Svcs.*, 189 Ga. App. 825, 826 (377 SE2d 909). Moreover, each contract contains its own restrictive covenant. If, as plaintiff contends, the restrictive covenant in the employment contract should be considered part and parcel of the sales contract, why was the restrictive covenant in the sales contract necessary? The answer lies in the restrictive covenants themselves. Each covenant points out that it is "in addition to, and not in lieu of," the other. Thus, each covenant stands on its own. Each covenant is separate and complete.

3. Plaintiff claims the restrictive covenant in the employment agreement is enforceable because the complaint seeks damages, not injunctive relief, against defendant. More specifically, plaintiff argues that a restrictive covenant cannot be deemed to restrain trade in a suit for monetary damages only, because, in the absence of injunctive relief, defendant can go on working. We fail to see the logic in this argument. An employee will be deterred from competing with a former employer if he can be held liable for monetary damages. Thus, a restrictive covenant in an employment agreement restrains trade and must be deemed unenforceable whether a plaintiff seeks monetary damages or injunctive relief.

4. The superior court did not err in granting defendant's motion for summary judgment upon Count 1 of the complaint.

*Judgment affirmed. Sognier, J., concurs. Carley, C. J., concurs specially.*

CARLEY, Chief Judge, concurring specially.

While I agree that the judgment in this case should be affirmed, I cannot join in the majority's reasoning. Specifically, contrary to the majority's conclusion, I believe that the original employment agreement containing the covenant not to compete was clearly made "in conjunction with" the sale of a business so as to trigger the "blue pencil" severability rule of *Jenkins v. Jenkins Irrigation*, 244 Ga. 95 (259 SE2d 47) (1979). However, that employment agreement expired three years from January 1, 1983, and the obligations of covenant

continued for an additional period of two years. I find no probative evidence supporting a finding that there was a viable and enforceable renewal of the employment contract subsequent to its expiration. Accordingly, the covenants restricting appellee's activity expired on January 1, 1988. Therefore, appellee's operation of a competing insurance business commencing on or about March 1, 1988 would not be proscribed.

DECIDED JUNE 26, 1990 —
REHEARING DENIED JULY 16, 1990 — CERT. APPLIED FOR.

*Glover & Davis, J. Littleton Glover, Jr., Delia T. Crouch, C. Jerry Willis*, for appellant.
*Arnall, Golden & Gregory, Charles L. Gregory, Sanders, Mottola, Haugen & Mann, Willis G. Haugen*, for appellee.