A95A1397. PCS JOINT VENTURE, LTD. v. DAVIS.
(465 SE2d 713)

RUFFIN, Judge.

PCS Joint Venture, Ltd. is a fertilizer manufacturer doing business as Farmer's Favorite Fertilizer ("FFF"). In addition to making standard grades of fertilizer, FFF also manufactures special grades based on the requests of various distributors. In 1987, James Davis contacted FFF requesting that it manufacture for him approximately 1,500 to 2,000 tons of a special grade of fertilizer annually. After adjustments to the originally requested composition, FFF agreed to manufacture the fertilizer. There is no evidence that the parties agreed to any territorial limits concerning the oral agreement. The

parties continued operating under the agreement until December 1991, and during that time FFF did not sell the special grade fertilizer to anyone but Davis. In December 1991 however, FFF agreed to sell 500 tons of the special grade fertilizer to one of its former customers, Kaiser Estech ("Kaiser"). A Kaiser representative testified that Kaiser purchased the fertilizer for sale to one customer, Hamil McNair, who was also one of Davis' customers.

FFF later sued Davis for money due on his account, and Davis counterclaimed, alleging FFF breached the parties' agreement that he would be the exclusive distributor of the fertilizer. Davis also claimed damages for FFF's alleged misappropriation of a trade secret. The jury returned a special verdict awarding Davis damages for FFF's breach of contract, but denying his claim for misappropriation of a trade secret. The court entered judgment on the verdict, and FFF moved for judgment n.o.v. or new trial, asserting in part that the exclusive sales agreement was unenforceable because it was overly broad and indefinite. We agree with FFF and reverse.

1. The parties devote numerous pages of their briefs attempting to classify the oral agreement and the laws governing it. We find the agreement is governed by Article 2 of the Uniform Commercial Code ("UCC") which "applies to transactions in goods. . . ." OCGA § 11-2-102. Article 2 broadly defines goods as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale. . . ." OCGA § 11-2-105 (1). Undoubtedly, the fertilizer at issue meets the UCC definition of "goods." Furthermore, whether we classify the agreement as one for the sale of fertilizer, or as a distributorship agreement, does not matter. Each would be governed by the UCC. See OCGA § 11-2-106 (1); *Intercorp v. Pennzoil Co.*, 877 F2d 1524 (11th Cir. 1989).

2. FFF contends the trial court erred in failing to grant its motion for new trial on Davis' counterclaim because the agreement was unenforceable due to being overly broad, too indefinite, and in restraint of trade. FFF argues that the absence of a territorial limit on the exclusive distribution agreement made it unenforceable. We agree.

While the UCC recognizes exclusive dealing agreements, it requires that all such agreements be lawful. OCGA § 11-2-306 (2). See also 6 Williston on Contracts, § 13:17 (4th ed. 1995). The agreement at issue here, however, is unlawful because it is a contract in general restraint of trade and " '[b]y both constitutional and legislative provision, Georgia prohibits contracts or agreements in general restraint of trade. (Cits.)' " *Roberts v. Tifton Med. Clinic*, 206 Ga. App. 612, 614 (426 SE2d 188) (1992). The parties orally agreed that FFF would sell the special grade fertilizer exclusively to Davis, thereby making Davis the exclusive distributor. While the effects of such an agreement will

not always be considered an unlawful restraint of trade, in this case the parties did not place *any* territorial limits on their agreement. The net effect of such an agreement is to exclude all other competition from selling and distributing the particular product, whether by FFF or by other distributors in other markets.

While we have not ruled on the validity of such provisions in exclusive dealing contracts, there is abundant authority regarding their enforceability in other types of contracts. See *Jenkins v. Jenkins Irrigation*, 244 Ga. 95 (2) (259 SE2d 47) (1979) (discussing the several different types of covenants in restraint of trade). Of the several types of covenants discussed in *Jenkins*, the agreement in this case is most closely analogous to a covenant ancillary to a distributorship agreement because the parties agreed that Davis would have the exclusive right to distribute the fertilizer. Such an agreement is enforceable "only where it is strictly limited in time and territorial effect. . . ." Id. at 98. Because the agreement in this case did not contain any territorial limitations, it is unenforceable, and the trial court erred in denying FFF's motion for a new trial on this ground.

3. Having ruled in Division 2 that the trial court erred in denying FFF's motion for new trial, it is unnecessary to address FFF's remaining enumerations asserting the evidence did not support two of the court's jury instructions.

*Judgment reversed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED DECEMBER 4, 1995 —
RECONSIDERATION DENIED DECEMBER 19, 1995 —

*Gardner, Willis, Sweat & Goldsmith, Donald A. Sweat*, for appellant.

*Hodges, Erwin, Hedrick & Coleman, William H. Hedrick*, for appellee.