A97A1214. JOHNSTONE v. TOM'S AMUSEMENT COMPANY, INC.

(491 SE2d 394)

BEASLEY, Judge.

Jeffrey Johnstone's appeal from a permanent injunction is in this Court despite Ga. Const. 1983, Art. VI, Sec. VI, Par. III (2). See *Saxton v. Coastal Dialysis &c.*, 267 Ga. 177 (476 SE2d 587) (1996). The trial court erroneously enjoined him from competing with Tom's Amusement Company ("Tom's") because, as Johnstone contends, the lease agreement containing the noncompete provision is more like an employment agreement than like a sale of business agreement for purposes of determining its enforceability.

Tom's places and services coin-operated video amusement games at various locations in North Georgia, Tennessee, and North Carolina. Beginning in 1987 until late 1990, Tom's employed Johnstone as a route man servicing the machines at many of the locations. Johnstone was not subject to any restrictive covenants or confidentiality agreements. In 1990, Tom's decided to discontinue servicing certain types of games because some customers were misusing the games for illegal gaming purposes. Tom's approached Johnstone about starting his own business and leasing these machines from Tom's. It is disputed whether Tom's indicated it would terminate Johnstone as an employee if he declined.

On December 21, 1990, Johnstone and Tom's executed an equipment lease agreement and an option agreement. Under the first agreement, Johnstone leased certain equipment at two business locations from Tom's for one year (with no authorization to use Tom's logo) and agreed that for the term of the lease plus ten years he would "refrain from carrying on or engaging (directly, through Affiliates, or by assisting others) in the amusement game activity competitive with the business of Lessor within the Geographic Territory" as defined therein. He further agreed, without any time limitation, to refrain from soliciting customers where the leased equipment was currently located for the purpose of providing them competitive equipment. A violation of either covenant would "toll and suspend the period of restraint for the amount of time that the violation continues, provided, that the injured party seeks enforcement promptly after discovery of the violation." Other provisions authorized the severing of invalid covenants and the reformation of overly broad covenants.

Under the option agreement, Johnstone could choose to purchase either all the leased equipment, "a minimum of 50 machines," or all equipment owned by Tom's. If he purchased only the leased equipment, Johnstone agreed to a particular covenant not to compete contained in the option agreement; if he purchased all of Tom's equip-

ment, then Tom's agreed to a separate covenant not to compete set forth in the option agreement.

Johnstone did not exercise either option to purchase. The first option was available only in the event Johnstone had leased 50 machines, which did not materialize. In May 1996, Tom's terminated the lease agreement and, claiming Johnstone had breached the lease, sued Johnstone for damages and for an injunction enjoining Johnstone from competing and soliciting in violation of the lease covenants. Both parties moved for partial summary judgment on the enforceability of the noncompete and nonsolicit provisions. The trial court held the lease's nonsolicit provision invalid on the ground that it contained no time limitation.[1] See *T. V. Tempo v. T. V. Venture*, 244 Ga. 776, 779 (262 SE2d 54) (1979). Finding that the lease was part of a transaction for the sale of a business, the trial court "blue pencilled" out the invalid nonsolicit provision and permanently enjoined Johnstone from violating the noncompete provision.

1. Johnstone enumerates as error the blue-penciling of the lease so as to excise the invalid nonsolicit provision. In the employment contract context, an unenforceable nonsolicit covenant invalidates any noncompete covenants found in the same agreement, for Georgia does not "blue pencil" restrictive covenants ancillary to employment contracts. *Ward v. Process Control Corp.*, 247 Ga. 583 (2), 584 (277 SE2d 671) (1981); *Adcock v. Speir Ins. Agency*, 158 Ga. App. 317, 319 (279 SE2d 759) (1981). See *Sunstates Refrigerated Svcs. v. Griffin*, 215 Ga. App. 61, 63 (2) (449 SE2d 858) (1994) ("Since Georgia does not 'blue-pencil' covenants restricting competition contained in employment contracts," invalid noncompete provision also invalidates nonsolicit provision). Nondisclosure and nonrecruit provisions in the same agreement rise or fall separately from the noncompete and nonsolicit provisions. Id. at 62. Even though the contract authorizes reformation of the restrictive covenants so as to bring them within the limits of the law, it is not allowed in the employment context. *Rollins Protective Svcs. Co. v. Palermo*, 249 Ga. 138, 139-140 (1) (287 SE2d 546) (1982); *Wulfhorst v. Hudgins & Co.*, 231 Ga. 170, 171 (200 SE2d 743) (1973). Nor does the severability clause in the contract allow a Georgia court in the employment context to excise an invalid nonsolicitation paragraph so as to preserve other restrictive covenants. *McNease v. Nat. Motor Club &c.*, 238 Ga. 53, 56-57 (2)

---

[1] Tom's did not cross-appeal the holding that the nonsolicit provision was invalid. Yet if, as Tom's claims, this is a sale of business transaction containing a restrictive covenant with a reasonable geographic limitation, then no time limitation was required. *Farmer v. Airco, Inc.*, 231 Ga. 847, 850 (204 SE2d 580) (1974). Because this is more like a restrictive covenant in an employment contract, the trial court's conclusion on the validity of the nonsolicit provision was correct in any case.

(231 SE2d 58) (1976); *Richard P. Rita Personnel &c. v. Kot*, 229 Ga. 314 (191 SE2d 79) (1972). But a severability clause will allow a court to excise the *entire* restrictive covenant so as to preserve the other covenants in the contract. *Circle Appliance Leasing v. Appliance Warehouse*, 206 Ga. App. 405 (425 SE2d 339) (1992); *O. H. Carter Co. v. Buckner*, 160 Ga. App. 627 (287 SE2d 636) (1981).

On the other hand, restrictive "covenants in the sale of a business, unlike covenants in contracts of employment, can be blue penciled to make them valid." *Lyle v. Memar*, 259 Ga. 209, 210 (378 SE2d 465) (1989). See *Redmond v. Royal Ford*, 244 Ga. 711, 713 (261 SE2d 585) (1979). Laying aside the question of whether excising an invalid nonsolicit provision is the proper exercise of blue-penciling, the issue is whether the restrictive covenant in Johnstone's lease is more like a restrictive covenant ancillary to an employment arrangement or more like a restrictive covenant ancillary to a sale of business transaction. *Watson v. Waffle House*, 253 Ga. 671, 672 (2) (324 SE2d 175) (1985).

2. In making this determination, normally we construe the agreement containing the restrictive covenant (the lease agreement) and the agreement selling the business (the option agreement) together if they were executed as part of the same transaction. *Lyle v. Memar*, 259 Ga. at 210; *Drumheller v. Drumheller Bag & Supply*, 204 Ga. App. 623, 626 (1) (420 SE2d 331) (1992). But in both *Lyle* and *Drumheller* the sale of the business was actually consummated, which did not occur here.

Besides, the lease agreement had its own restrictive covenant that was in addition to the restrictive covenants contained in the option agreement. The lease's restrictive covenant applied so long as the lease constituted the arrangement between the parties; whereas, the two different restrictive covenants in the option agreement applied depending on whether and which option to purchase was exercised. "If, as plaintiff contends, the restrictive covenant in the employment contract should be considered part and parcel of the sales contract, why was the restrictive covenant in the sales contract necessary? The answer lies in the restrictive covenants themselves. . . . [E]ach covenant stands on its own. Each covenant is separate and complete." *Arnall Ins. Agency v. Arnall*, 196 Ga. App. 414, 419 (2) (396 SE2d 257) (1990) (physical precedent only). *Arnall* held that the restrictive covenant in the employment contract executed the same day as the sales agreement, which had its own restrictive covenant, was not ancillary to the sale of the business. Because Johnstone did not exercise the option contained in the option agreement, which had its own restrictive covenants, and because the covenant Tom's seeks to enforce is found only in the lease agreement, we need not consider the option agreement to determine whether the lease's

restrictive covenant is to be treated as ancillary to an employment contract or to a sale of business transaction.

Even if we considered both agreements, the lease covenant would nevertheless receive strict scrutiny and not be blue-penciled. "Restrictive covenants entitled to [less stringent] treatment are those restricting the after-sale competitive activity of the seller, not the before-sale activity of the purchaser." *Kloville, Inc. v. Kinsler*, 239 Ga. 569, 570 (238 SE2d 344) (1977). The lease covenant, if construed in conjunction with the option agreement, limited the before-sale activity of buyer Johnstone.

3. Therefore, we review the lease covenant on its own. "[C]ovenants ancillary to a professional partnership agreement[,] . . . covenants ancillary to franchise and distributorship agreements[, and] covenants ancillary to contracts for services by independent contractors . . . have been treated by [Georgia courts] like employee covenants ancillary to employment contracts." (Citation omitted.) *Jenkins v. Jenkins Irrigation*, 244 Ga. 95, 97-98 (259 SE2d 47) (1979). An agreement in which an employee leases from his employer the same equipment he had been servicing for his employer has the characteristics of an independent contractor relationship approximating that of an employment relationship. See *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 182 (236 SE2d 265) (1977); *Amstell, Inc. v. Bunge Corp.*, 213 Ga. App. 115, 116-117 (2) (443 SE2d 706) (1994). *Moore v. Preferred Research*, 191 Ga. App. 26, 27 (1) (381 SE2d 72) (1989), held that a licensing agreement to use certain techniques and procedures of the licensor in a specified geographic area is analogous to an employment contract. A lease agreement to use certain equipment of a lessor in a specified area has similar attributes.

The focus in such cases is on the relative bargaining power of the parties. "The rationale behind the distinction in analyzing covenants not to compete is that a contract of employment inherently involves parties of unequal bargaining power to the extent that the result is often a contract of adhesion. On the other hand, a contract for the sale of a business interest is far more likely to be one entered into by parties on equal footing. [Cit.]" *Watson v. Waffle House*, 253 Ga. at 672. An employee negotiating with his employer regarding the employer's assets has "little bargaining clout. . . . He [is] nothing more than an employee, albeit an important one, and as an employee [he] could reasonably have assumed that if he did not do as [the employer] wished he would be stigmatized as not being a team player, thereby jeopardizing his career prospects with [the employer]." *White v. Fletcher/Mayo/Assoc.*, 251 Ga. 203, 207 (303 SE2d 746) (1983). See *S. Hammond Story Agency v. Baer*, 202 Ga. App. 281, 282 (414 SE2d 287) (1991).

Johnstone was negotiating with his employer, which had announced it wanted to get out of servicing certain troublesome machines on his route and was interested in Johnstone leasing them. Although Tom's denies it threatened Johnstone with termination if he declined, Johnstone was at least faced with the stigma of not being a team player and did testify: "I understood that I would be terminated from my employment if I did not sign the Lease."

If this lease were a sales contract, Tom's would be selling "business assets, stock or goodwill to" Johnstone. *Amstell, Inc. v. Bunge Corp.*, 213 Ga. App. at 116 (2); *Owens v. RMA Sales*, 183 Ga. App. 340, 341 (1) (358 SE2d 897) (1987). Were the lease a transfer of assets or goodwill to Johnstone, it would be Johnstone requiring a covenant not to compete from Tom's, not vice versa. Johnstone as the buyer in this transaction would have been the one concerned that he not face competition from Tom's in the same areas where the purchased or leased machines were located. See *Dunaway v. Parker*, 215 Ga. App. 841, 848 (2) (453 SE2d 43) (1994) (restrictive covenant normally runs in favor of the buyer to protect the goodwill he is purchasing). Since " 'the covenant not to compete . . . was not made by the seller in conjunction with the sale of a business [but] was made by the buyer in conjunction with the acquisition of an interest in a business' [cit.]," the covenant receives the severe scrutiny given restrictive covenants ancillary to an employment contract. *Horne v. Drachman*, 247 Ga. 802, 805 (280 SE2d 338) (1981). See *Kloville, Inc. v. Kinsler*, 239 Ga. at 570.

Based on similar considerations, this Court and the Supreme Court of Georgia traditionally have treated restrictive covenants favoring the lessor in lease agreements as ancillary to an employment contract. See *Club Properties v. Atlanta Offices-Perimeter*, 180 Ga. App. 352 (348 SE2d 919) (1986); *Watson v. Waffle House*, supra. We do likewise here. Blue-penciling not being available, the invalid nonsolicit provision necessarily invalidates the noncompete provision, and the noncompete provision is unenforceable on this ground alone.

4. Under the strict law applicable to employment contracts, the noncompete covenant falls on other grounds also. By prohibiting Johnstone from "assisting others" in the amusement game business, Johnstone is prohibited from working for a competitor in any capacity, which is fatal to the covenant. *American Gen. &c. Ins. Co. v. Fisher*, 208 Ga. App. 282, 284 (1) (430 SE2d 166) (1993). Restraining Johnstone from "carrying on or engaging" in the amusement game business implies that he may not do so in any capacity. *Fleury v. AFAB, Inc.*, 205 Ga. App. 642, 643 (423 SE2d 49) (1992). A ten-year duration is excessively long following a one-year lease. The tolling provision is identical to the tolling provision which invalidated the

restrictive covenant in *Gynecologic Oncology, P.C. v. Weiser*, 212 Ga. App. 858, 859 (2) (443 SE2d 526) (1994).

The trial court erred in (1) denying Johnstone's motion for partial summary judgment, (2) granting Tom's motion for partial summary judgment, and (3) granting the permanent injunction against Johnstone. These holdings moot all other enumerations of error.

*Judgment reversed. McMurray, P. J., concurs. Senior Appellate Judge Harold R. Banke concurs in the judgment only.*

DECIDED AUGUST 5, 1997 —
RECONSIDERATION DENIED AUGUST 28, 1997 —

*Gambrell & Stolz, Robert G. Brazier, Seaton D. Purdom*, for appellant.

*Ralston & Panter, David E. Ralston, Waycaster, Morris, Johnson & Dean, R. Leslie Waycaster, Jr.*, for appellee.