A90A0060. REED v. EASTERN ELECTRIC APPARATUS
REPAIR COMPANY et al.
(391 SE2d 472)

BIRDSONG, Judge.

This appeal arises from the denial of Theodore Reed's partial motion for summary judgment to have an employment covenant held invalid. The trial court held the agreement to be enforceable but subject to modification, and set a date for an evidentiary hearing to prescribe those areas essential for the protection of the interest of Eastern Electric Apparatus Repair Company, Inc. et al. We granted this interlocutory appeal to Reed, however, to determine whether the trial court erred in holding the subject document to be ancillary to the sale of a business and thus subject to "blue pencil" modification, rather than entirely unenforceable as an employment contract, as Reed had contended.

The restrictive document entered into in 1986, prohibited Reed "during the term of the Agreement and for a period of two years following the termination of this Agreement . . . either separately or in association with any other person or entity, directly or indirectly, engage in the business of manufacturing, developing, selling, leasing, licensing, or otherwise marketing a business for the service and repair of electrical apparatus and products in the [31] states listed. . . ."

Reed's employment terminated in 1988; by its terms, this agreement and its restrictions terminate November 1990. *Held*:

We find this agreement to be ancillary to the sale of a business and not a mere employment contract, and therefore, the trial court did not err in finding it may be modified.

Both Reed and Eastern describe exhaustively the machinations by which Reed and another entered a joint venture, with Caronan Fund raising $30.1 million in guarantee, for their purchase of all the repair facilities of Westinghouse Electric Company in 31 states. Reed contends that he "necessarily capitulated to Caronan's terms because there was insufficient time to negotiate a joint venture financing arrangement with another investment group and personal bankruptcy would have thus been the consequence of noncompliance." He contends further that after he entered the deal, his stock (for which he paid $88,000) was diluted and his employment was terminated for unspecified "cause."

Upon a full analysis of all the contortive arrangements Reed brought to bear in forming Eastern Electric and the arguments of all the parties, we conclude Reed's agreement not to compete was not improperly induced, but instead was voluntarily made and specifically negotiated by him as the instigator of the deal to induce Caronan to put up $30.1 million for purchase of the Westinghouse repair business. Reed's management expertise was the motivating factor in Caronan's participation, and his agreement not to join a competitor was a primary basis of the deal.

Although he technically purchased stock in Eastern Electric, he in essence was the seller of his own good will and expertise; this is the quid pro quo which validates the agreement as one ancillary to the sale of a business. See *Redmond v. Royal Ford*, 244 Ga. 711 (261 SE2d 585); *Jenkins v. Jenkins Irrigation*, 244 Ga. 95, 98 (259 SE2d 47).

Our conclusion that the agreement should be enforced is further mandated by the terms of the Revolving Credit and Term Loan Agreement between Reed and Fleet Credit Corporation, which provided debt financing for the deal. The loan agreement provided that as a *condition precedent* to the loans, "Reed . . . shall have entered into an Employment Agreement with the Borrower [Eastern Electric], all upon terms satisfactory to the Lender [Fleet]." If this condition precedent was too much arm-twisting for Reed to have to bear, it illbehoves him to say so now, after the money was laid out upon his promise. That the deal went sour for him later is not cause to break the agreement that he had used to induce the bargain by which, no doubt, he had hoped to reap a more advantageous result.

This restrictive agreement made ancillary to the sale of a business is subject to modification by "blue penciling" such provisions as are overbroad in securing and exceeding the quid pro quo underlying the sale. The trial court did not err in granting only partial summary judgment to Reed, and in determining the agreement to be ancillary to the sale of a business, and hence susceptible to the blue pencil rule. The proceedings are remanded to the trial court for evidentiary hear-

ing, particularly to determine whether the court should "[require] the seller to do that which the buyer and seller bargained for, yet in a smaller area than that agreed to by the seller." *White v. Fletcher/ Mayo/Assoc.*, 251 Ga. 203, 206 (303 SE2d 746).

*Judgment affirmed. Deen, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 23, 1990.

*Kilpatrick & Cody, Matthew J. Mitten, Jerre B. Swann, Patrick A. Dawson,* for appellant.

*Rogers & Hardin, Phillip S. McKinney, Allie S. Edwards, Long, Weinberg, Ansley & Wheeler, Barry S. Mittenthal,* for appellees.