A92A0608, A92A0609. DRUMHELLER et al. v. DRUMHELLER BAG & SUPPLY, INC.
A92A0610. McLEAN v. DRUMHELLER BAG & SUPPLY, INC.
(420 SE2d 331)

McMurray, Presiding Judge.

David V. Drumheller, Michael A. Drumheller, Jr. and Frank McLean (plaintiffs) filed separate petitions for declaratory judgment against Drumheller Bag & Supply, Inc. ("Drumheller Bag") and DBS Acquisition Company, Inc. ("DBS"), seeking declarations that non-competition covenants ("the covenants") executed in favor of Drumheller Bag are void and unenforceable. Drumheller Bag and DBS counter-claimed, seeking declarations that the covenants are valid and enforceable. The parties filed opposing motions for summary judgment.

In 1984, David V. Drumheller started Drumheller Bag, "a one-man company" in the business of purchasing and selling bag products. Drumheller Bag later began manufacturing bags and bag products and David V. Drumheller's father, Michael A. Drumheller, Sr., and brother, Michael A. Drumheller, Jr., joined the business, purchasing Drumheller Bag stock and running "the textile bag division and . . . primarily the sales and . . . every other administrative duty [a] small company, [where] everyone does everything[, required]." Frank McLean, a close friend of the Drumheller family, also purchased Drumheller Bag stock and began working as the company's primary

salesman.[1]

In 1986, Drumheller Bag sold 50 percent of its stock to T. O. Bancroft, Jr., in exchange for $400,000 and an annual salary of $48,000. Bancroft, "a friend of the [Drumheller] family . . ." and an operator of a "bag business" in Louisiana, did not become involved in the daily operations of the business. These responsibilities continued with the Drumhellers and two other company officials, "Jim Jordan and Jack Grable."

On January 29, 1988, DBS entered into a stock sales agreement with the stockholders of Drumheller Bag, purchasing all 2,000 shares of outstanding Drumheller Bag stock.[2] DBS paid the stockholders $1,000,000 and agreed to pay certain stockholders, including David V. Drumheller and Michael A. Drumheller, Jr., an amount of the lesser of $350,000 or a sum based on Drumheller Bag's annual net earnings over a five-year period. David V. Drumheller and Michael A. Drumheller, Jr., were also relieved of substantial personal liability on Drumheller Bag's corporate debt.

The Drumhellers and McLean executed employment contracts pursuant to the terms of the stock sales agreement, providing for their continued employment with Drumheller Bag for three years. The stock sales agreement also required them to execute documents entitled, "*CONFIDENTIALITY AND NON-COMPETITION AGREEMENT*." Plaintiff executed such agreements providing, in pertinent part, as follows:

"*Covenant Not To Compete*. The Seller . . . agrees that for a period of five (5) years from the date of this Agreement or for a period of eighteen (18) months after termination of Seller's employment with the Company, whichever is later, the Seller will not, directly or indirectly (whether through any person, firm, company, corporation or other entity, other than the Company, which is located in the geographic area described herein or through any person, firm, company, corporation or other entity, other than the Company, which is located outside the geographic area described herein, but which does business in the described geographic area or solicits business in the described geographic area), do any of the following in the states of Alabama, Arkansas, Florida, Georgia, Kentucky, Louisiana, Mississippi, North

---

[1] Frank McLean was a "very good salesman, Number 1 salesman for the company." He was later "brought in as director of sales [and] tried unsuccessfully to hire two [sales] people, but neither one of them worked out . . . so [the Drumhellers and McLean] felt like, to . . . keep from losing confidence with the customers and all, that it would be better for [McLean] to go back on the road."

[2] Bancroft sold 1,000 shares (50 percent), David V. Drumheller sold 270 shares (13.5 percent), McLean sold 130 shares (6.5 percent), Michael A. Drumheller, Sr. sold 100 shares (5 percent), Michael A. Drumheller, Jr. sold 100 shares (5 percent) and three other stockholders sold 400 shares (20 percent).

Carolina, Tennessee, South Carolina, Virginia, or West Virginia:

"(a) for his own account, for any person, firm, company, corporation, or other entity, other than the Company, solicit business or cause or assist agents of any person, firm, company, corporation, or other entity to solicit business of a type similar to that solicited by the Company from any person, firm, company, corporation or other entity who was, as of the date of this Agreement, or within a three (3) year period prior hereto, a customer of the Company, as disclosed by the Company's books and records, or solicit business from any prospective customer of the Company with whom the Company has had contact as disclosed by the Company's books and records;

"(b) in any way, whether personally or through agents, other persons, or otherwise, divert or take away or attempt to divert or take away any of such customers or prospective customers, or otherwise interfere with or attempt to interfere with the Company's relations with any of such customers, prospective customers or business prospects; . . .

"(d) own, manage, operate, join, contract with, or participate in the ownership, management or control of or be employed by or be connected in any manner with (whether as principal, partner, shareholder, director, officer, employee, agent, consultant or otherwise) any business which is or may be competitive in any manner with the business engaged in by the Company; it being understood that the business engaged in by the Company includes, but is not limited to, the design, manufacture and sale of jute, burlap, polypropelene and paper bags and bag material and the sale and distribution of jute."

DBS merged into Drumheller Bag after the stock purchase and, for the next three years, plaintiffs continued working in critical management roles at Drumheller Bag. However, their activities were internally monitored by a financial controller brought in by the executive committee of Drumheller Bag's new parent company, Norfoods.

The employment contracts executed by David V. Drumheller and Michael A. Drumheller, Jr., expired on January 31, 1991, and their employment with Drumheller Bag terminated on February 28, 1991. Frank McLean's employment contract also expired on January 31, 1991; however, he continued working as a corporate officer until March of 1991. McLean was terminated after it was discovered that he joined with David V. Drumheller and Michael A. Drumheller, Jr., purchasing bag making equipment that could be used in competition with Drumheller Bag.

The trial court denied plaintiffs' motions for summary judgment and granted Drumheller Bag's motion for summary judgment, declaring that "the intention of the parties is clear with sufficient words used to arrive at the intention of the parties . . ." and that the five-year duration period prescribed by the covenants is reasonable. The

trial court characterized the geographical area in the covenants as "overly broad" and narrowed the area to the States of Georgia, Florida, Alabama and Tennessee. The trial court then permanently enjoined plaintiffs "from taking any act in violation of the terms . . . of the [covenants]." These appeals followed and plaintiffs first filed their appeals in the Supreme Court of Georgia. However, that Court transferred these appeals to this Court. *Held*:

1. Plaintiffs contend the covenants are ancillary to the employment contracts and are totally void and unenforceable because of overbroad, vague and indefinite terms regarding the scope of prohibited competitive activities.

"[A] covenant entered into as part of a sale of a business can generally be drafted more broadly than one which is entered into as part of an employment contract." *Annis v. Tomberlin & Shelnutt Assoc.*, 195 Ga. App. 27, 30 (2) (392 SE2d 717). "The rationale behind the distinction in analyzing covenants not to compete is that a contract of employment inherently involves parties of unequal bargaining power to the extent that the result is often a contract of adhesion. On the other hand, a contract for the sale of a business interest is far more likely to be one entered into by parties on equal footing. *White v. Fletcher/Mayo/Assoc.*, 251 Ga. 203 (303 SE2d 746) (1983)." *Watson v. Waffle House*, 253 Ga. 671 (2), 672 (324 SE2d 175). "A different standard is applied in determining the validity of covenants contained in employment contracts and those which are part of a contract to sell a business. When a portion of a covenant not to compete which is a part of a sale of a business interest is found to be unreasonable, the court has tended . . . to uphold the remaining portions of the covenant by 'blue penciling' or severing the overly broad restrictions. On the other hand, the court has found covenants not to compete which are part of a contract of employment to be nonseverable and has held that overbreadth of one portion of the covenant so taints the entire covenant as to make it unenforceable." *Watson v. Waffle House*, 253 Ga. 671 (2), supra. However, "if a contract for the sale of a business and an employment contract are part of the same transaction they may be construed together to supply missing elements and blue penciled to make overbroad terms valid." *Lyle v. Memar*, 259 Ga. 209, 210 (378 SE2d 465).

In the cases sub judice, the evidence shows that Drumheller Bag was a close knit operation, dependent upon plaintiffs' service and manufacturing skills. The evidence also shows that plaintiffs executed the employment contracts as part of the stock sales agreement; that plaintiffs were represented by an attorney during the sales negotiations and that they were fully aware of the consequences of a stock purchase. Further, there is no evidence that DBS exerted unfair pressure on plaintiffs to sell their stock. On the contrary, the record indi-

cates that Michael A. Drumheller, Sr., played a major role in initiating negotiations for the sale of Drumheller Bag and that David V. Drumheller and Michael A. Drumheller, Jr., joined in their father's efforts. There is also evidence that Frank McLean agreed to go through with the deal after he was informed that the transaction would be profitable and that his participation was necessary for the sale. Further, it appears that plaintiffs' attorney approved the covenants before the sale and that plaintiffs had full and fair opportunities to consider the terms of the stock sale agreement before closing. Moreover, it is undisputed that plaintiffs profited from the stock sale and that the sale relieved David V. Drumheller and Michael A. Drumheller, Jr., of personal liability on about $1,000,000 of Drumheller Bag's corporate debt. These circumstances reveal that the employment contracts were a large part of the mutual consideration of the stock sale agreement and were thus part of the same transaction. Consequently, any overbroad, indefinite or vague restrictions do not invalidate the covenants in their entirety but require blue penciling so as "to make overbroad terms valid." *Lyle v. Memar*, 259 Ga. 209, 210, supra.

2. Plaintiffs contend the covenants are unenforceable because they are not supported by consideration. This contention is without merit. "When a person sells a business and covenants not to compete in a certain territory, the buyer pays and the seller receives a part of the total purchase price as consideration for that covenant." *Jenkins v. Jenkins Irrigation*, 244 Ga. 95, 99 (3), 100 (259 SE2d 47).

3. The Supreme Court of Georgia endorses the practice of determining reasonableness of a covenant not to compete by analyzing it in terms of time, territory and description of the prohibited activity. *Lyle v. Memar*, 259 Ga. 209, 210, supra. In the cases sub judice, plaintiffs do not question the trial court's declaration that the five-year duration periods prescribed in the covenants are reasonable. Nor do they contend that the territorial limits of the covenants as narrowed by the trial court were unnecessary to protect Drumheller Bag's legitimate business interests. Instead, plaintiffs challenge the breadth and burdensomeness of the activities sought to be restricted, arguing that terms of the covenant unreasonably restrict business activities in any capacity. See *Dunn v. Frank Miller Assoc.*, 237 Ga. 266, 268 (227 SE2d 243).

Where the sale of a business is involved, the purchaser's interest in what he has acquired cannot be effectively realized unless the seller agrees not to act so as to diminish the value of what has been sold. See Restatement of the Law of Contracts, Second, § 188, Comment (b). It follows that the reasonableness of any covenant not to compete ancillary to the sale of a business must be measured on the basis of whether the restricted activity protects the purchaser's legitimate

business interests, i.e., the value of the business and its good will. *Jenkins v. Jenkins Irrigation*, 244 Ga. 95, 99 (3) 101, supra. See *Farmer v. Airco*, 231 Ga. 847, 849 (204 SE2d 580). In the cases sub judice, we agree that certain language of the covenants is overbroad and could be construed as restricting almost any business activity. However, the covenants also contain language narrowly prohibiting plaintiffs from engaging in or actively participating in "the business [of] . . . the design, manufacture and sale of jute, burlap, polypropelene and paper bags and bag material and the sale and distribution of jute." Further, there is an abundance of evidence showing that these restrictions are necessary and essential for the protection of Drumheller Bag's legitimate business interests, e.g., Drumheller Bag was engaged in these narrowly defined activities before the stock sale and plaintiffs' performance of these activities was then critical to Drumheller Bag's business success. Consequently, since the trial court failed to "blue pencil" the covenants so as to include only those *enumerated activities* necessary and essential for the protection of Drumheller Bag's legitimate business interests, the cases must be remanded for such a determination. See *Hamrick v. Kelley*, 260 Ga. 307 (392 SE2d 518). See also *Reed v. Eastern Elec. &c. Co.*, 194 Ga. App. 650 (391 SE2d 472).

4. Plaintiffs contend the trial court violated provisions of OCGA § 9-11-65, which provides that "[e]very order granting an injunction and every restraining order shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained. . . ." OCGA § 9-11-65 (d). It is unnecessary to address this enumeration.

"In *Clein v. Kaplan*, 201 Ga. 396 (40 S. E. 2d, 133), [the Supreme Court] held that the office of a declaratory judgment is to declare rights, not to grant coercive relief." *City of Nashville v. Snow*, 204 Ga. 371, 376 (1) 380 (49 SE2d 808). In the cases sub judice, there appears to be no evidence that plaintiffs have breached the agreements. The parties are merely seeking a declaration of their rights and obligations under the covenants. Consequently, the trial court was without authority to grant coercive relief via a permanent injunction.

*Judgment reversed and cases remanded. Sognier, C. J., and Cooper, J., concur.*

DECIDED JUNE 8, 1992 —
RECONSIDERATION DENIED JUNE 23, 1992 —

*Blackburn, Bright & Edwards, J. Converse Bright*, for appellants.

*Troutman, Sanders, Lockerman & Ashmore, Daniel S. Rein-*

*hardt, Dan R. Gresham, Langdale, Vallotton, Hickman & Chapman, William P. Langdale, Jr.,* for appellee.