### A03A0360. HICKS v. DOORS BY MIKE, INC.
(579 SE2d 833)

BLACKBURN, Presiding Judge.

This case involves the enforceability of a noncompetition and nonsolicitation agreement (the "Agreement") entered into by Kenneth L. Hicks and Doors by Mike, Inc. ("Doors by Mike") in conjunction with the sale of Hicks's business to Doors by Mike. The trial court granted Doors by Mike interlocutory injunctive relief against Hicks, and Hicks appeals, arguing that: (1) the Agreement is vague, ambiguous, and an illegal restraint on trade; and (2) even if the Agreement is enforceable, Doors by Mike failed to offer sufficient evidence that Hicks was in violation of the terms of the Agreement. For the reasons set forth below, we affirm.

"[T]he sole purpose for granting interlocutory injunctions is to preserve the status quo of the parties pending a final adjudication of

---

[17] *McKinney v. State*, 250 Ga. App. 22, 23 (549 SE2d 164) (2001).

the case." *MARTA v. Wallace*.[1] "The trial court has broad discretion to decide whether to grant or deny a request for an interlocutory injunction, and the appellate courts will not disturb the trial court's exercise of its discretion unless a manifest abuse of discretion is shown or there was no evidence on which to base the ruling." (Citations omitted.) *Chambers v. Peach County*.[2]

Hicks and his partner, Dennis Hulsey, owned and operated Residential Gutter Services, a business which sold and installed residential gutters. Doors by Mike purchased the business assets of Residential Gutter Services on October 12, 2001, for $185,000. In conjunction with the sale of the business, Hicks signed a noncompetition and nonsolicitation agreement. Under the terms of the nonsolicitation agreement, Hicks agreed that for a period of five years following the sale of his business to Doors by Mike, he would not

> directly or indirectly, consult for, provide financial services or financing for, own stock in, engage in sales or marketing for or manage any other firm, company, business, or other business entity which sells or provides the Products that compete or will compete with the Company in the provision of the Products ("Competing Business") within a FIFTY (50) mile radius of Conyers, Georgia ("Territory").

Hicks also agreed that within the same time period and territorial limits, he would not "own, possess or hold, directly or indirectly, any legal, beneficial or financial interest in any Competing Business in the Territory or provide management, financial or consulting services to any Competing Business in the Territory through any other" entity.

Under the terms of the nonsolicitation agreement, Hicks agreed that for a five-year period following the sale of his business to Doors by Mike, he would not, on his own behalf or on behalf of another,

> solicit, contact, call upon, communicate with or attempt to communicate with any customer or prospect of Company, or any representative of any customer or prospect of Company, with a view to sell or provide any product, equipment or service competitive or potentially competitive with the Products and Services of the Company, provided that the restrictions set forth in this section shall apply only to customers or prospects of the Company, or representative of customers or prospects of Company, with whom [Hicks] had contact

---

[1] *MARTA v. Wallace*, 243 Ga. 491, 494 (3) (254 SE2d 822) (1979).
[2] *Chambers v. Peach County*, 268 Ga. 672, 673 (1) (492 SE2d 191) (1997).

while engaging in sales on behalf of the Company or an employee of the Company.

1. Hicks maintains that the Agreement is vague, ambiguous, and an illegal restraint on trade. He argues that the Agreement is unreasonable in duration, territorial coverage, and scope of prohibited activity.

In determining the enforceability of restrictive covenants, we first determine what level of scrutiny to apply. In this case, the Agreement was ancillary to the sale of a business; for this reason, it is subject to much less scrutiny than that applied to employment contracts. *New Atlanta Ear, Nose &c. Assoc. v. Pratt.*[3]

> A covenant entered into as part of a sale of a business can generally be drafted more broadly than one which is entered into as part of an employment contract. The rationale behind the distinction in analyzing covenants not to compete is that a contract of employment inherently involves parties of unequal bargaining power to the extent that the result is often a contract of adhesion. On the other hand, a contract for the sale of a business interest is far more likely to be one entered into by parties on equal footing.

(Citation and punctuation omitted.) *Drumheller v. Drumheller Bag & Supply.*[4] Moreover, "Georgia law provides substantial protection and latitude to covenants ancillary to the sale of a business because the covenants are a significant part of the consideration for the purchase of the business." *Attaway v. Republic Svcs. of Ga.*[5]

"The reasonableness of . . . a restraint against competition is a question of law to be decided by the trial court. . . . The reasonableness of a covenant not to compete given as part of the sale of a business is analyzed in terms of its limitations on time and territory and its description of the prohibited activity." *Carroll v. Ralston & Assoc.*[6] In this case, the terms of the Agreement prohibit competition and solicitation for five years within a fifty-mile radius of Conyers, Georgia. The trial court found these time and territorial restrictions to be reasonable, and we agree.

At the hearing on the application of Doors by Mike for interlocutory relief, Mike Dawkins, owner and president of Doors by Mike,

---

[3] *New Atlanta Ear, Nose &c. Assoc. v. Pratt*, 253 Ga. App. 681, 683 (560 SE2d 268) (2002).

[4] *Drumheller v. Drumheller Bag & Supply*, 204 Ga. App. 623, 626 (1) (420 SE2d 331) (1992).

[5] *Attaway v. Republic Svcs. of Ga.*, 253 Ga. App. 322, 325 (558 SE2d 846) (2002).

[6] *Carroll v. Ralston & Assoc.*, 224 Ga. App. 862, 863-864 (481 SE2d 900) (1997).

testified that Doors by Mike does business within a 100-mile radius of Conyers. Given the territorial range of the business, we cannot say that a territorial restriction of half of that radius is unreasonable as a matter of law. "[A]n employer is permitted to include in [a noncompetition] covenant the territory in which the employee has in fact performed work, thus protecting itself from the unfair appropriation of good will and information acquired in the course of that work." *Sysco Food Svcs. v. Chupp.*[7]

As to the duration restriction, our Supreme Court has held that "[a] covenant not to compete contained in the sale of a business, which restriction is within a reasonable space of territory, need not be limited as to time." *Barrett-Walls, Inc. v. T. V. Venture, Inc.*[8] It follows, then, that a period of five years, which has been found reasonable under the stricter scrutiny given noncompete agreements in employment contracts, see, e.g., *Smith v. HBT, Inc.*,[9] is a reasonable restriction.

Hicks also challenges the scope of the activities prohibited by the Agreement. He argues that the Agreement prohibits him from working in the gutter business in any capacity.

> Where the sale of a business is involved, the purchaser's interest in what he has acquired cannot be effectively realized unless the seller agrees not to act so as to diminish the value of what has been sold. It follows that the reasonableness of any covenant not to compete ancillary to the sale of a business must be measured on the basis of whether the restricted activity protects the purchaser's legitimate business interests, i.e., the value of the business and its good will.

(Citation omitted.) *Drumheller,* supra at 627-628 (3).

In this case, the restricted activity — Hicks's participation in a residential gutter business — protected a legitimate business interest of Doors by Mike, the purchaser. The record reveals that Hicks was thoroughly conversant with all aspects of the gutter business and that Doors by Mike would not have purchased Residential Gutter Services unless it obtained the benefit of Hicks's expertise and his customer base. Testimony indicated that customer contacts in the gutter business are important; the typical customer is a repeat customer. After Hicks started another gutter business in Stockbridge, well within the 50-mile radius set forth in the Agreement, business

---

[7] *Sysco Food Svcs. v. Chupp*, 225 Ga. App. 584, 586 (1) (484 SE2d 323) (1997).
[8] *Barrett-Walls, Inc. v. T. V. Venture, Inc.*, 242 Ga. 816, 819 (251 SE2d 558) (1979).
[9] *Smith v. HBT, Inc.*, 213 Ga. App. 560, 563 (4) (445 SE2d 315) (1994).

for Doors by Mike fell off "drastically." Finally, the trial judge, who had the authority to blue pencil the covenants into a more limited form because they were ancillary to the sale of the business, see *White v. Fletcher/Mayo/Assoc.*,[10] deleted the words "will compete" from the noncompetition agreement. We find, therefore, that the restrictions in the Agreement which prohibited Hicks from operating a competing gutter business and soliciting customers of Doors by Mike were reasonable and essential to protect the value of the business Doors by Mike had purchased as well as the good will of its customer base. *Carroll*, supra at 865.

Hicks argues that the Agreement prohibits him from working in any capacity in the gutter business. Our Supreme Court "has held on several occasions that a covenant wherein the employee agreed not to accept [any] employment with a competitor 'in any capacity' imposes a greater limitation upon the employee than is necessary for the protection of the employer and therefore is unenforceable." *Howard Schultz & Assoc. v. Broniec.*[11] In this case, however, we are dealing with noncompetition and nonsolicitation agreements entered into in conjunction with the sale of a business. As we stated above, such agreements are given substantial protection and latitude because the covenants are a significant part of the consideration for the purchase of the business. *Attaway*, supra at 325.

> The vendor who signs a covenant not to compete when selling a business receives an equivalent for his partial abstention from that business, in the increased price paid him for it on account of his covenant. The covenant operates to his affirmative pecuniary benefit and against his impoverishment, in that, while being paid for desisting from the particular business in the locality covered by it, he may still enter upon other pursuits of gain in the same locality or upon this one in other localities.

Id. at 324. This language indicates that a seller of a business may be required to desist from a particular business, i.e., refrain from engaging in that business in any capacity, if "it is found essential, by clear and convincing evidence, to protect the purchaser, despite the overbreadth of the covenant." (Punctuation omitted.) *White*, supra at 205. The record indicates that Doors by Mike is entitled to the protection afforded by the Agreement.

Hicks also complains that the Agreement is vague and ambiguous, making it impossible for him to know what activities are prohib-

---

[10] *White v. Fletcher/Mayo/Assoc.*, 251 Ga. 203, 206 (303 SE2d 746) (1983).
[11] *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 184 (2) (236 SE2d 265) (1977).

ited. He points out that, although the Agreement forbids him from selling "products" or products which are "potentially competitive," or having "contact" with "prospects of the Company," none of these terms is defined. We find no merit in this argument. The language to which Hicks objects is nearly identical to that of a restrictive covenant examined by our Supreme Court in *W. R. Grace & Co. v. Mouyal*[12] and held to be enforceable.

2. In his second enumeration of error, Hicks contends that, even if the Agreement is valid, Doors by Mike did not present evidence showing that Hicks was in violation of the Agreement. We disagree.

At the hearing on the application for injunctive relief of Doors by Mike, Dawkins testified that early in June, an employee of Doors by Mike by the name of Forest stopped coming to work. Forest, a stepbrother of Hicks, called Dawkins two weeks later and said he wanted to pick up his tools. When he came by the company to do so, he was driving a new truck marked "Gutter Pro." Not long after, Dawkins got a message from Forest saying that some of his tools were missing. When Dawkins returned the call, Hicks answered. Dawkins said nothing and hung up; within a short time, Forest returned Dawkins's call.

Joshua East, who had worked for Hicks and who is a current employee of Doors by Mike, testified that he had received a telephone call from Hicks a week and a half before the hearing. Hicks told East that he was doing gutter work and asked East if he wanted to come to work for him installing gutters.

Nancy Dawkins, who does much of the administrative work for Doors by Mike, testified that she received a personal check from Hicks in payment for his COBRA health insurance coverage. When she called the number printed on Hicks's check, she heard an answering machine message informing her that she had reached Gutter Pro. Nancy Dawkins also testified that she had called Hicks's number on the morning of the hearing and gotten the same message.

Hicks was represented by counsel at the hearing on the application for injunctive relief. He did not attend the hearing, and his counsel did not present evidence.

This evidence provided a basis on which the trial court could conclude that Hicks was acting in violation of the Agreement. The trial court did not abuse its discretion in granting Doors by Mike interlocutory injunctive relief.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

---

[12] *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464 (422 SE2d 529) (1992).

DECIDED MARCH 19, 2003.

*Miller & Markle, Eric D. Miller*, for appellant.
*Robert H. Stansfield*, for appellee.