## A03A2385. HOLSAPPLE et al. v. SMITH.

### (599 SE2d 28)

ADAMS, Judge.

In general, noncompetition agreements that are ancillary to the sale of a business may be modified by the court if they are found to be overly broad, but similar covenants ancillary to employment agreements may not. In this case, Gloria Smith entered into a letter of intent and an asset purchase agreement in connection with the sale of her business and her continued employment with the buyer, and the agreements contain a covenant against competition. The primary issue on appeal is whether the trial court correctly concluded that the covenant was ancillary to an employment agreement.

Smith, president of Southeastern Home Mortgage Corporation ("SEHM"), and Dean A. Holsapple, president of Holsapple Mortgage Lending, Inc. ("HML"), negotiated the prospect of Smith selling her residential home mortgage business to HML and her continued employment by HML thereafter. On September 1, 2001, Smith, individually and in her capacity as president of SEHM, signed a "Letter of Understanding & Intent," with HML, which Holsapple signed solely in his capacity as president of HML. The first paragraph of the five-paragraph document mentions a noncompetition covenant and indicates that three other agreements are contemplated:

> This agreement is between Holsapple Mortgage Lending, Inc. [d/b/a] Southeastern Home Mortgage (HML) and Southeastern Home Mortgage Corp., and it's [sic] principle sole stockholder Gloria N. Smith. By entering into this agreement, Gloria Smith will agree to a No Compete Covenant for a period of five years *as referenced in the Asset Purchase* from the date of sale. Parties agree the date of sale will be September 1, 2001, and hereby agree to enter into a series of three agreements referenced as follows. . . .

(The asterisks indicate a handwritten addition to the letter.) The next three paragraphs describe three proposed agreements: (1) an asset purchase agreement; (2) an agreement whereby HML would purchase Smith's industry knowledge, lender relationships, and the right to process 150 loans originated by Smith; and (3) a twenty-four-month employment agreement.

The description of the employment agreement does not include reference to a noncompetition agreement. It states,

> HML will enter into a 24-month Employment Agreement with Gloria Smith to process her Georgia loans with a commission structure of 60/40 60% to Gloria Smith. . . . Compensation for the employment agreement will be $40,000.00. Half payable when 75 Gloria Smith originated loans are closed, other half payable when an additional 75 Gloria Smith originated loans are closed. This Employment agreement has a one time renewable option.

In the final paragraph, the letter of intent provides that in the event that regulatory approval is not obtained "this agreement" will be null and void:

> Buyer has deposited with Gloria Smith $60,000.00 in good faith to be held during the investigative process. Upon approval by the Department of Banking & Finance, this transaction will be finalized. Should the application be declined, the $60,000.00 will be refunded & this agreement will be null & void.

In a document dated September 7, 2001, HML, SEHM, and Smith entered into a two-page asset purchase agreement, by which Smith sold all of the assets of SEHM, with limited exceptions, to HML. The asset purchase agreement included a noncompetition agreement as follows:

> HML is further guaranteed by Gloria Smith [that] she will not be a princip[al], stockholder or employee of a business originating loans in Georgia that competes with buyer[']s business for a period of five (5) years from sale date. Gloria Smith further agrees that all Georgia loans she originates will be processed by the buyer[']s company in accordance with the employment agreement referenced in the Letter of Understanding and Intent, at attachment A, incorporated herein by reference.

With the exception of handwritten additions, Holsapple drafted the two documents. There is no evidence in the record that the parties ever executed the two other agreements contemplated in the letter of intent.

After a dispute arose, Smith filed a complaint against HML and Holsapple. She sought a declaration that the noncompetition agreement is not enforceable; damages for wrongful termination, breach of contract, fraud, and slander; and attorney fees and punitive damages. HML and Holsapple answered, and HML counterclaimed,

seeking enforcement of the noncompetition agreement and damages for breach of contract, breach of fiduciary duty, tortious interference, and fraud. HML also requested attorney fees and punitive damages. HML and Holsapple then moved for partial judgment on the pleadings seeking a declaration that the noncompetition agreement is enforceable and that Holsapple was not a party to any breach of contract. They also sought dismissal or a more definite statement on the slander and fraud claims. Smith responded with a motion for partial judgment on the pleadings on the enforceability of the covenant.

The trial court held that the parties entered into two agreements on September 7, 2001, and that the letter of intent was Smith's employment contract. The court noted that the same noncompetition clause was found in both agreements but concluded that the clause was made ancillary to the employment agreement and that therefore it is subject to strict scrutiny under *Swartz Investments v. Vion Pharmaceuticals*, 252 Ga. App. 365 (556 SE2d 460) (2001). The court then held that under strict scrutiny, the noncompetition covenant was not enforceable; the court also held that it was not enforceable because there was no consideration for that covenant. The court granted judgment to Smith on her claim for declaratory judgment, granted the defendants' motions for a more definitive statement as to fraud, and denied the remainder of the defendants' motions.

1. HML and Holsapple first argue that the covenant was signed in the course of the sale of a business and is subject to a lower level of scrutiny. Accordingly, they assert that the trial court should have granted their motion on the pleadings with regard to the noncompetition agreement and denied Smith's.

"A contract in general restraint of trade or which tends to lessen competition is against public policy and is void." (Footnote omitted.) *Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289, 292 (2) (498 SE2d 346) (1998). "The first step in considering the enforceability of restrictive covenants is to determine the level of scrutiny to be applied." (Footnote omitted.) *Advance Technology Consultants v. RoadTrac*, 250 Ga. App. 317, 319 (1) (551 SE2d 735) (2001). There are three levels: strict scrutiny, which applies to employment contracts; middle or lesser scrutiny, which applies to professional partnership agreements; and much less scrutiny, which applies to sale of business agreements. *Habif*, 231 Ga. App. at 290-291 (1).

The two documents are poorly drafted. The trial court concluded that the letter of intent was the employment agreement, but that is not evident from the plain meaning of the documents. The letter of intent clearly pertains to the entire transaction contemplated by the parties, and it clearly indicates that the parties "agree to enter into a series of three agreements": the asset purchase agreement, the

intangible knowledge purchase agreement, and an employment agreement. And the reference to a noncompetition covenant in the letter is found in the opening paragraph, not in the paragraph pertaining to the employment agreement.

Six days later (based on the date shown above the signatures), the parties entered into only one written agreement, an asset purchase agreement. They did not execute the other two identified agreements, including the employment agreement. In fact, the asset purchase agreement contains elements of all three proposed agreements. A section entitled "Terms of Sale," shows that Smith would be paid $50,000 for the business assets, $120,000 for her intangible knowledge, and $40,000 "for the employment agreement referenced in the attached Letter of Understanding and Intent." The plain meaning of this last provision indicates that the employment agreement is still a separate agreement, both from the asset purchase agreement and the letter of intent; this is consistent with the letter of intent itself in that it indicated that the employment agreement would be a separate agreement.

The trial court, however, based its legal conclusions on a finding that the two documents were executed simultaneously on September 7, and that therefore they should be construed together. This finding was erroneous.

"In deciding a motion for judgment on the pleadings, the issue is whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. [Cit.]" *Rolling Pin Kitchen Emporium v. Kaas*, 241 Ga. App. 577, 578 (2) (527 SE2d 248) (1999). "[A]ll well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false." *South v. Bank of America*, 250 Ga. App. 747, 749 (551 SE2d 55) (2001). But the trial court "need not adopt a party's legal conclusions based on these facts. [Cits.]" *Lewis v. Turner Broadcasting System*, 232 Ga. App. 831, 832 (2) (503 SE2d 81) (1998).

Accordingly, in deciding whether Smith was entitled to judgment on the pleadings, the trial court must accept the well-pleaded allegations by HML and Holsapple. They allege that the letter of intent, which is not dated, was executed on September 1 and that the asset purchase agreement was executed on September 7. Given these facts, one could conclude that despite the parties' intent as exemplified in the letter of intent, the parties ultimately decided to employ only one written agreement, the so-called asset purchase agreement. The proposed intangible knowledge agreement may have been incorporated therein. And the employment agreement was apparently never reduced to writing. Indeed, in her amended complaint, Smith alleges, "In addition to the written terms of the contract, the parties had

various verbal agreements. . . ." Thus, the only written noncompetition agreement would be found in the asset purchase agreement, and therefore ancillary to the sale of a business. See *Pope v. Kem Mfg. Corp.*, 249 Ga. 868, 869-870 (1) (295 SE2d 290) (1982) (covenants between an employer and an employee must be in writing). Also under that scenario, there would be consideration for the covenant, i.e., the money paid for the business. See *Hicks v. Doors by Mike*, 260 Ga. App. 407, 411 (1) (579 SE2d 833) (2003) (noncompetition and nonsolicitation agreements entered into in conjunction with sale of a business "are given substantial protection and latitude because the covenants are a significant part of the consideration for the purchase of the business") (citation omitted). Accordingly, Smith was not entitled to judgment on the pleadings based on a finding that strict scrutiny applied.

Finally, we disagree with Smith's final argument. She contends that she is entitled to judgment on the pleadings because the covenant contains no territorial restriction whatsoever and therefore it would not be enforceable even under the reduced scrutiny. See *New Atlanta Ear, Nose & Throat Assoc. v. Pratt*, 253 Ga. App. 681, 687 (560 SE2d 268) (2002) (regardless of level of scrutiny, lack of a territorial restriction renders covenant unenforceable). The covenant in the asset purchase agreement provides that Smith "will not be a princip[al], stockholder or employee of a business originating loans in Georgia that competes with buyer[']s business. . . ." Smith contends that this is a limitation on the scope of business, not on the territory. Her argument is based on an understanding of the term of art "originating loans," the definition of which is not in the record. See OCGA § 1-3-1 (b). Therefore she was not entitled to judgment on the pleadings based on this argument.

In deciding whether HML and Holsapple were entitled to partial judgment on the pleadings regarding the noncompetition agreement, the trial court must use Smith's well-pleaded allegations, which in this case includes the alleged agreements. She alleged that both documents were signed on September 1, yet the asset purchase agreement, which was incorporated by reference in the petition, is dated September 7. Also, undated handwriting was added to the letter of intent, which adds further uncertainty regarding the attendant and surrounding circumstances of the execution of the two documents. OCGA § 13-2-2 (1). Finally, it is possible that only part of the contracts at issue were reduced to writing, raising even more issues. See id. The trial court would not be able to resolve these uncertainties in a motion for judgment on the pleadings, and resolution of these issues might determine whether the two documents

should be construed together. Accordingly, HML and Holsapple were not entitled to a judgment on the pleadings regarding the noncompetition agreement.

2. Holsapple urges that he is entitled to judgment on the pleadings regarding Smith's claim of breach of contract because he signed the documents in his official capacity as president of HML. Smith concedes that Holsapple is entitled to judgment on the pleadings with regard to any written contract. Accordingly, the trial court should have granted judgment in favor of Holsapple based on any written contracts. To the extent that Smith alleges breach of oral agreements, the trial court's order stands.

3. Holsapple contends that the trial court should have granted judgment on the pleadings on Smith's claim of slander. He contends that each of the three statements that he is alleged to have made about her were merely expressions of opinion and not actionable. See *Webster v. Wilkins*, 217 Ga. App. 194, 195 (1) (456 SE2d 699) (1995).

"To determine whether a declaration constitutes slander per se, the court looks to 'the plain import of the words spoken' and will not enlarge their meaning by innuendo. [Cit.]" *Palombi v. Frito-Lay*, 241 Ga. App. 154, 156 (1) (526 SE2d 375) (1999). "The pivotal questions are whether the statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false." (Citation and punctuation omitted.) *Webster*, 217 Ga. App. at 195 (1).

Smith alleges that Holsapple said that Smith (1) screwed a client; (2) was greedy and selfish; and (3) "intentionally messed things up in Florida." Whether Smith is greedy and selfish cannot be proved false and is therefore a matter of opinion. The other two assertions could, depending on the circumstances, reasonably be interpreted to mean that Smith defrauded a client and that she intentionally interfered with a business opportunity, both of which could possibly be considered a charge "against another in reference to his trade, office, or profession, calculated to injure him therein." OCGA § 51-5-4 (a) (3). See also *Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 890-891 (520 SE2d 721) (1999) (statement actionable if it implies the allegation of undisclosed defamatory facts).

*Judgment affirmed in part and reversed in part and case remanded. Andrews, P. J., and Barnes, J., concur.*

DECIDED MARCH 24, 2004 —
RECONSIDERATION DENIED APRIL 13, 2004.

*Gambrell & Stolz, Robert G. Brazier, Steven G. Hall, Seaton D. Purdom,* for appellants.
*Carothers & Mitchell, Thomas M. Mitchell,* for appellee.