[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 19, 2010
JOHN LEY
CLERK

_____

No. 10-11890
Non-Argument Calendar
_____

D. C. Docket No. 1:09-cv-02999-TWT

MICHAEL A. MOHR,
D. JACK SAWYER, JR.,
TODD TAUTFEST,

Plaintiffs-Counter-Defendants-
Counter-Claimants-Appellees,

versus

BANK OF NEW YORK MELLON CORPORATION,

Defendant-Counter-Claimant-
Counter-Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 19, 2010)

Before WILSON, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal is the second time that we have reviewed the propriety of injunctive relief in this case. In the first appeal, Bank of New York Mellon Corporation challenged a preliminary injunction that prohibited it from enforcing noncompetition and nonsolicitation covenants executed by Mohr and Sawyer during the sale of their investment management business to Mellon Corporation. We ruled that the restrictive covenants were enforceable, vacated the preliminary injunction, and remanded for the district court to review the reasonableness of the covenants. Mohr v. Bank of N.Y. Mellon Corp., No. 09-15813, slip op. at 10–16 (11th Cir. Mar. 24, 2010). On remand, the district court preliminarily enjoined Mohr and Sawyer from soliciting the employees of Mellon Corporation, but refused to enjoin preliminarily Mohr and Sawyer from competing against Mellon Corporation or soliciting its customers. Because Mellon Corporation is entitled to a preliminary injunction that enforces the covenants not to compete and not to solicit, we reverse and remand with instructions to enter a preliminary injunction against Mohr and Sawyer.

## I. BACKGROUND

We included in our first opinion excerpts of restrictive covenants executed by Mohr and Sawyer that were relevant to determining the level of scrutiny to apply to those covenants. Id., slip op. at 2–7. In this opinion, we include excerpts

of the noncompetition and nonsolicitation covenants that are material to our inquiry about whether those covenants are reasonable. We repeat only those facts necessary to resolve this appeal.

In the Purchase Agreement and employment agreements, Mohr and Sawyer covenanted not to compete against the Mellon Corporation. Section 5.10 of the Purchase Agreement provided that Mohr and Sawyer would not compete against Mellon Corporation within 50 miles of any city listed on an attached schedule for twelve months after termination or resignation. Id., slip op. at 3–5. The schedule listed 27 cities in Georgia and South Carolina and 16 cities in 12 other states. In the event Mellon Corporation ended its business activities in a particular city, the covenant stated that city would be eliminated from the schedule:

> (c) [Mohr and Sawyer] hereby acknowledge and agree that in the event [Mellon Corporation] (or any Successor) ceases to carry on the business of the Company or a like or similar business to that of the Company in a portion of the Restricted Territory, this Section 5.10 shall be deemed to expire only with respect to that portion of the Restricted Territory and shall continue in full force and effect with respect to the remainder of the Restricted Territory . . . .

The noncompetition covenant stated that its time, scope, and geographic area was reasonable and integral to the contemporaneous sale and employment transactions:

> (d) The parties acknowledge that the time, scope, geographic area and other provisions of this Section 5.10 have been specifically negotiated by sophisticated commercial parties and agree that (i) all such provisions are reasonable under the circumstances of the transactions

3

contemplated hereby, (ii) are given as an integral and essential part of the transactions contemplated and (iii) but for the agreement of [Mohr and Sawyer] in this Section 5.10, [Mellon Corporation] would not have entered into or consummated the transactions contemplated hereby. [Mohr and Sawyer] have independently consulted with their respective counsel and have been advised in all respects concerning the reasonableness and propriety of the covenants contained herein, with specific regard to the business to be conducted by the Company and its Affiliates, and represent that this Section 5.10 is intended to be and shall be fully enforceable and effective in accordance with its terms.

The employment agreements cross-referenced the noncompetition covenant in the Purchase Agreement and stated that the restrictive covenant was part of the consideration for the purchase of The Arden Group and employment of Mohr and Sawyer:

3.10 Noncompetition. Employee agrees to be bound by the noncompetition provisions set forth in Section 5.10 of the Purchase Agreement. Employee acknowledges that the time, scope, geographic area and other provisions of Section 5.10 of the Purchase Agreement have been specifically negotiated by the parties and agrees that (a) all such provisions are reasonable under the circumstances of the transactions contemplated by this Agreement and the Purchase Agreement, (b) are given as an integral and essential part of this Agreement and the Purchase Agreement and (c) but for the agreement of Employee in Section 5.10 of the Purchase Agreement, the Purchaser would not have agreed to the acquisition of the assets of the Seller and the [Mellon Corporation] would not have entered into this Agreement.

The employment agreements also contained a covenant not to solicit the customers of Mellon Corporation. The restrictive covenant prohibited Mohr and Sawyer from soliciting either the customers of The Arden Group and Mellon

4

Corporation or prospective customers that Mohr and Sawyer had contacted on behalf of Mellon Corporation:

3.05 Solicitation of Clients. Employee recognizes and acknowledges that it is essential for the proper protection of Confidential Information that Employee be restrained from soliciting business of or doing business with Customers (as defined below) for any business purpose, other than Mellon's own business purpose. During the Restricted Period, Employee shall not, in any capacity, directly or indirectly, (i) solicit the Asset Management Services (as defined below) business of any Customer for any other person or entity, (ii) divert, entice, or otherwise take away from the Company the Asset Management Services business or patronage of any Customer, or attempt to do so, or (iii) solicit or induce any Customer to terminate or reduce its business relationship with the Company with respect to Asset Management Services. For purposes of this Agreement, "Asset Management Services" shall mean providing investment advisory or investment management services, or any Fiduciary Services (as such term is defined in the Purchase Agreement), to individual or institutional customers. For purposes of this Agreement, "Customer" shall mean any person or entity (a) who (1) received Asset Management Services from the Seller at any time during the two (2) year period immediately preceding the Effective Date and (2) received Asset Management Services from the Seller, the Company or an affiliate of the Company at any time during the two (2) year period immediately preceding the date of termination of Employee's employment with the Company, or (b) who Employee contacted, directly or indirectly, in whole or in part, on behalf of Company to provide Asset Management Services within the two (2) year period immediately preceding the date of termination of Employee's employment with the Company.

After Mohr and Sawyer worked in the Atlanta, Georgia, office of the Mellon Corporation for about six years, they resigned and accepted employment in the Atlanta office of a competitor, Wilmington Trust Company. Mohr, slip op. at 7.

5

Two days after their resignation, Mohr and Sawyer filed a complaint that requested a declaratory judgment that the restrictive covenants were "invalid and unenforceable . . . under Georgia law" and an injunction to prevent Mellon Corporation from enforcing the covenants. Id., slip op. at 7–8. Mellon Corporation counterclaimed and requested both a declaratory judgment that the restrictive covenants were enforceable and a temporary restraining order to prevent Mohr and Sawyer from violating the covenants. Id., slip op. at 8.

The district court enjoined Mellon Corporation from enforcing the restrictive covenants, but this Court vacated the preliminary injunction. Id., slip op. at 16. We held that the restrictive covenants were executed ancillary to the sale of Mohr and Sawyer's business, and we remanded for the district court to examine the reasonableness of the covenants. Id., slip op. at 13–16.

On remand, Mellon Corporation again moved for a preliminary injunction. Mellon Corporation argued that Mohr and Sawyer had breached both the noncompetition and nonsolicitation covenants. Mellon Corporation submitted evidence that Mohr and Sawyer had breached the covenants in three ways: Mohr and Sawyer had contacted indirectly some of their former customers; Sawyer had solicited two employees of Mellon Corporation; and some customers of Mohr and Sawyer had moved their business to Wilmington Trust. Mohr and Sawyer

6

responded that the restrictive covenants were overbroad and were not "enforceable with or without blue penciling." Mohr and Sawyer also argued that Mellon Corporation could not prove that the restrictive covenants had been breached or that it had suffered irreparable harm.

After an evidentiary hearing, the district court preliminarily enjoined Mohr and Sawyer from soliciting employees of Mellon Corporation, but the district court refused preliminarily to enjoin Mohr and Sawyer from competing against or soliciting customers of Mellon Corporation. The district court stated that Mellon Corporation was unlikely to prevail on the merits because "it [was] not clear . . . what" the company was "purchasing when [it] bought the assets of The Arden Group and attained a no-compete, no-solicitation agreement"; the court was "not persuaded" that Mellon Corporation "ha[d] suffered or [would] suffer irreparable injury"; and Mellon Corporation had not "shown that the balance of the harms favor[ed] issuing a temporary restraining order or a preliminary injunction."

## II. STANDARDS OF REVIEW

"The ultimate decision to grant or deny a preliminary injunction is reviewed for abuse of discretion, but the determinations of law the district court makes in reaching that decision are reviewed de novo." Bailey v. Gulf Coast Transp., Inc., 280 F.3d 1333, 1335 (11th Cir. 2002). We review related findings of fact for clear

error.  Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc., 304 F.3d 1167, 1171 (11th Cir. 2002).

## III. DISCUSSION

We remanded this case for the district court to review the restrictive covenants for reasonableness, but it failed to do so.  That inquiry turns on whether "the restricted activity protect[ed] the . . . legitimate business interests" of Mellon Corporation.  Mohr, slip op. at 15–16 (quoting Drumheller v. Drumheller Bag & Supply, 420 S.E.2d 331, 335 (Ga. Ct. App. 1992)).  Under Georgia law, restrictive covenants are judged "'in terms of [their] limitations on time and territory and . . . description of the prohibited activity.'"  Hicks v. Doors By Mike, Inc., 579 S.E.2d 833, 836 (Ga. Ct. App. 2003) (quoting Carroll v. Ralston & Assocs., P.C., 481 S.E.2d 900, 902 (Ga. Ct. App. 1997)); Drumheller, 420 S.E.2d at 335. Reasonableness is context-specific:  restrictive covenants "are considered in light of the specific factual situation and the nature of the terms of the covenant." Annis v. Tomberlin & Shelnutt Assocs., Inc., 392 S.E.2d 717, 721 (Ga. Ct. App. 1990). Because Mohr and Sawyer executed the noncompetition and nonsolicitation covenants "ancillary to the sale of [their] business," the covenants are "subject to much less scrutiny."  Am. Control Sys., Inc. v. Boyce, 694 S.E.2d 141, 145 & n.17 (Ga. Ct. App. 2010) (citing Dalrymple v. Hagood, 271 S.E.2d 149, 150 (Ga. 1980),

8

and <u>Ins. Ctr., Inc. v. Hamilton</u>, 129 S.E.2d 801, 804–05 (Ga. 1963)).

Mellon Corporation argues that the district court erred when it refused to enjoin Mohr and Sawyer from competing against or soliciting the customers of Mellon Corporation. Mellon Corporation argues that the noncompetition and nonsolicitation covenants survive the low level of scrutiny applied to covenants executed ancillary to the sale of a business and that it is entitled to a preliminary injunction. We address each covenant in turn and then address whether Mellon Corporation is entitled to a preliminary injunction.

*A. The Covenant Not to Compete is Reasonable.*

Because the noncompetition covenant was the product of an arms' length negotiation between Mellon Corporation and Mohr and Sawyer, the covenant is entitled to "substantial protection and latitude." <u>Hicks</u>, 579 S.E.2d at 835 (quoting <u>Attaway v. Republic Servs. of Ga., LLP</u>, 558 S.E.2d 846, 848 (Ga. Ct. App. 2002)). A restrictive covenant in the sale of a business may be drafted broadly. <u>Annis</u>, 392 S.E.2d at 721. Mohr and Sawyer argue that the scope of the noncompetition covenant, which prohibits them from "engag[ing] . . . in any capacity" in another business that has "activities, products or services . . . similar to providing investment advisory or investment management services," is overbroad, but the two businessmen "specifically negotiated" the terms of the covenant and

9

agreed it was "reasonable under the circumstances." See Am. Control Sys., 694 S.E.2d at 143 n.3, 145 (finding reasonable a covenant not to "directly, or indirectly . . . be connected with or concerned in any business enterprise or employment which shall be in competition with the business of" the purchaser). The limitation on Mohr and Sawyer is permissible under the "much lesser scrutiny afforded sale of business contracts." Habif, Arogeti & Wynne, P.C. v. Baggett, 498 S.E.2d 346, 353 (Ga. Ct. App. 1998) (citing Dalrymple, 271 S.E.2d 149).

The district court ruled that the territorial restriction in the noncompetition covenant was too vague to enforce, but we disagree. Mohr and Sawyer agreed not to compete with Mellon Corporation within a 50-mile radius of specific cities, and Georgia courts have upheld similar territorial restrictions. See Annis, 392 S.E.2d at 721–22 (50-mile radius "from the Company's principal place of business in Augusta, Georgia"); Hicks, 579 S.E.2d at 835–36 (50-mile radius of Conyers, Georgia); see also Nat'l Settlement Assocs. of Ga., Inc. v. Creel, 349 S.E.2d 177, 179–80 (Ga. 1986) (upholding under strict scrutiny a covenant not to compete within a 200-mile radius of Atlanta, Georgia). Georgia law "'does not require exact precision; it forbids unreasonably broad territorial coverage,'" Reardigan v. Shaw Indus., Inc., 518 S.E.2d 144, 147 (Ga. Ct. App. 1999) (quoting Sysco Food Svcs. of Atlanta, Inc. v. Chupp, 484 S.E.2d 323, 325 (Ga. Ct. App. 1997)), and

10

Mohr and Sawyer can determine where they may compete against Mellon Corporation. Although the district court stated that it was "pretty silly" to "define the geographic scope of the non-compete agreement" based on business interests of Mellon Corporation in 2003, territorial restrictions defined at the time of a sale give sellers fair notice and the "ability to determine with certainty the prohibited territory" while allowing purchasers to prevent the "possible unfair appropriation of contacts" and "customer relationships" that they pay to acquire, Habif, 498 S.E.2d at 351. Mohr and Sawyer argue that the substantial growth of Mellon Corporation eliminates the need for the territorial restrictions, but prosperity provides all the more reason to protect clientele.

Although Mohr and Sawyer may not have contacts in all the cities listed in the schedule, the reasonableness of territorial restrictions in the sale of a business is determined by "the territory served by the employer, not by the employee." Id. at 352; see Chaichimansour v. Pets Are People Too, 485 S.E.2d 248, 249 (Ga. Ct. App. 1997) (a covenant not to compete can "preclude[] competition with respect to clients with whom the employee had not had contact while working for the employer"). The Arden Group and Mellon Corporation had business interests in the named cities, and Mohr and Sawyer agreed expressly that the "geographic area" was "reasonable" and "an integral and essential part of" the sale of their

11

business and their employment with Mellon Corporation. See Rash v. Toccoa Clinic Med. Assocs., 320 S.E.2d 170, 174 (Ga. 1984).

If the schedule of cities is stale, the noncompetition covenant provides a remedy. The covenant states that if Mellon Corporation ends its business in a particular city, that city is "deemed to expire." The district court need only "blue pencil" any cities in which Mellon Corporation no longer does business. See New Atlanta Ear, Nose & Throat Assocs., P.C. v. Pratt, 560 S.E.2d 268, 273 (Ga. Ct. App. 2002) (a court may "blue pencil" to "limit an area, thus making it reasonable"). That the list may be reduced does not invalidate the covenant; "indeed, the narrowing aspect of the covenant only work[s] to the . . . advantage [of Mohr and Sawyer], as the maximum number of locations covered by the covenant [is] set and immovable." Id. at 272.

### B. The Covenant Not To Solicit Clients is Reasonable.

Mohr and Sawyer argue that the nonsolicitation covenant is overbroad because it lacks a territorial restriction and because they were prohibited from soliciting all customers of Mellon Corporation, but these arguments fail. The restrictive covenant was tailored to prevent Mohr and Sawyer from pirating customers they had sold to, obtained for, or contacted on behalf of Mellon Corporation. Mellon Corporation purchased "the Customers of [The Arden

12

Group]" and the "goodwill associated with [The Arden Group] and [its] future prospects," Mohr, slip op. at 3, and the nonsolicitation covenant protects those interests. See Hicks, 579 S.E.2d at 836 (nonsolicitation covenant was "reasonable and essential to protect the value of the business . . . purchased as well as the good will of its customer base"); Carroll, 481 S.E.2d at 902 (affirming decision to enjoin accountant from soliciting customers he had sold to purchaser). Because Mohr and Sawyer agreed they would not solicit their former and prospective customers, "'there is no need for a territorial restriction expressed in geographic terms.'" Palmer & Cay of Ga., Inc. v. Lockton Cos., 629 S.E.2d 800, 804 (Ga. 2006) (quoting W.R. Grace & Co. v. Mouyal, 422 S.E.2d 529, 533 (Ga. 1992)).

*C. Mellon Corporation Is Entitled To a Preliminary Injunction to Enforce the Restrictive Covenants.*

To obtain a preliminary injunction, Mellon Corporation had to satisfy a four-part test. Mellon Corporation had to establish a "substantial likelihood of success on the merits," it would suffer an "irreparable injury . . . unless the injunction issues," its injury outweighs any damage to Mohr and Sawyer, and the injunction would "not be adverse to the public interest." Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1448 (11th Cir. 1991). Mellon Corporation satisfied its burden.

The district court ruled that Mellon Corporation could not prevail on the merits because the restrictive covenants are vague and overbroad, but the

13

covenants are reasonable. The covenants protect the "legitimate business interests" of Mellon Corporation. Drumheller, 420 S.E.2d at 335. Mellon Corporation established a substantial likelihood of success on the merits.

The district court also ruled that Mellon Corporation would not suffer irreparable harm without an injunction and the balance of harms favored Mohr and Sawyer, but we disagree. The record establishes that Mellon Corporation paid handsomely to acquire the goodwill and wealthy clientele that Mohr and Sawyer had cultivated for The Arden Group. Mellon Corporation employed Mohr and Sawyer to retain that customer base. Mellon Corporation was deprived of the benefit of its bargain when Sawyer and Mohr left and enticed former customers to transfer their business to Wilmington Trust. See Ins. Ctr., 129 S.E.2d at 805 ("Where the goodwill [of a business] is sold and [the seller] is permitted to solicit and take the business, the goodwill is destroyed."). "Although economic losses alone do not justify a preliminary injunction, 'the loss of customers and goodwill is an irreparable injury.'" BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 970 (11th Cir. 2005) (quoting Ferrero, 923 F.2d at 1449); see Bijou Salon & Spa, LLC v. Kensington Enters., Inc., 643 S.E.2d 531, 534 (Ga. Ct. App. 2007) (injunctive relief appropriate when sellers violate noncompetition and nonsolicitation covenants); Carroll, 481 S.E.2d at 902.

14

Mohr and Sawyer argue that monetary losses suffered by Mellon Corporation are not sufficiently "dramatic" to justify injunctive relief, but "this Court has held 'specious' [the] argument suggesting that, in deciding this element of the preliminary injunction calculus, the court ought to compare the actual losses sustained to the size of the company." Ferrero, 923 F.2d at 1449.

Mohr and Sawyer do not face serious injury. Mohr and Sawyer might have to relocate their offices, but they will retain their positions with Wilmington Trust. During the brief interim in which they must abide by the restrictive covenants, Mohr and Sawyer can continue to conduct business outside the restricted territory.

A preliminary injunction also serves the interests of the public. Because Mohr and Sawyer agreed that the restrictive covenants constituted "a significant part of the consideration for the purchase of the business,'" the covenants should be given "substantial protection and latitude." Hicks, 579 S.E.2d at 835 (quoting Attaway, 558 S.E.2d at 848). Mohr and Sawyer argue that customers will lose their preferred money managers, but Mohr and Sawyer may advise any former customer they do not solicit to move their investment accounts to Wilmington Trust. That customers might not be aware of Mohr's and Sawyer's resignations will not trump "the law's interest in upholding and protecting freedom to contract and to enforce contractual rights and obligations," Rash, 320 S.E.2d at 174,

15

particularly when the two businessmen "specifically negotiated" and agreed to the restrictive covenants.

## IV. CONCLUSION

We **REVERSE** the denial of a preliminary injunction to prevent Mohr and Sawyer from competing against or soliciting the customers of Mellon Corporation, and we **REMAND** with instructions for the district court to enter a preliminary injunction that Mohr and Sawyer not compete against or solicit the customers of Mellon Corporation.

**REVERSED and REMANDED with instructions.**